**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JORGE RAY CORONA,**

        **Plaintiff,**

        **v.**                **No. 17-CV-00805-MCA-CG**

**CITY OF CLOVIS, CLOVIS POLICE**
**DEPARTMENT, OFFICER BRENT**
**AGUILAR, AND OFFICER TRAVIS**
**LOOMIS, IN THEIR PERSONAL AND**
**OFFICIAL CAPACITIES,**

        **Defendants.**

**DEFENDANTS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT THEREOF**

      **COME NOW** Defendants,[1] by and through their attorneys of record Jarmie & Associates, and pursuant to FED. R. CIV. P. 56, hereby move for summary judgment on both of plaintiff's claims under 42 U.S.C. § 1983 as well as several of plaintiff's claims under the New Mexico Tort Claims Act ("NMTCA"). Plaintiff has been contacted and opposes this Motion.[2]

**I.**    ***Statement of Undisputed Material Facts***

      1.  Clovis Police Department Officers Brent Aguilar and Travis Loomis were on duty in the early morning hours of August 3, 2014 in Clovis, New Mexico. *See First Amended Complaint*,

---

[1] At the outset, plaintiff cannot maintain any 42 U.S.C. § 1983 claims against the Clovis Police Department, as CPD is not a "person" within the meaning of Section 1983 and is not a separate suable entity as set forth in Defendants' *Motion for Partial Judgment on the Pleadings*.

[2] Undersigned counsel attempted to contact Plaintiff's counsel regarding another case earlier this week and learned that Plaintiff's counsel is out of state until August 6, 2018.  Undersigned counsel indicated they would note Plaintiff's opposition to the Motion and notify the Court via errata should Plaintiff's position change.

Doc. No. 1-1 (filed Aug. 8, 2017), at ¶¶ 3-4; *Defendants' Answer to First Amended Complaint*, Doc. No. 4 (filed Aug. 15, 2017), at ¶¶ 3-4.

    2.  On August 3, 2014, at approximately 2:15 a.m., Officer Aguilar, while travelling in his patrol unit, observed a vehicle speeding through a red light in Clovis. *Affidavit of Brent Aguilar*, attached hereto as **Exhibit A**, at ¶¶ 2-3; *Aguilar Dash Camera Video*,[3] submitted herewith as **Exhibit B**, at 00:00 to 00:51; *see also Complaint*, at ¶ 7; *Answer*, at ¶ 7.

    3.  Officer Aguilar activated the lights on his patrol unit and pursued the speeding vehicle. **Exhibit A**, at ¶ 4; **Exhibit B**, at 00:51 to 01:51. Officer Aguilar conducted a traffic stop of the vehicle. *Id.*; *see also Complaint*, at ¶ 6; *Answer*, at ¶ 6.

    4.  Officer Aguilar approached the driver's side of the stopped vehicle and asked the driver to roll down the rear left passenger window. **Exhibit B**, at 01:51 to 02:09; *see also Complaint*, at ¶ 8; *Answer*, at ¶ 8. Officer Aguilar did so because it was dark and the vehicle windows were tinted, and he wanted to see if there were any other passengers in the vehicle, or if there were any weapons in the immediate reach of anyone in the vehicle. **Exhibit A**, at ¶ 5.

    5.  Officer Aguilar asked the driver of the vehicle, Teshia Lujan, for her driver's license, insurance, and registration. While Officer Aguilar was interacting with Ms. Lujan, plaintiff (who was sitting in the rear passenger's side of Lujan's stopped vehicle) asked Officer Aguilar why he stopped the vehicle. **Exhibit B**, at 02:09 to 03:00; *see also Complaint*, at ¶ 9; *Answer*, at ¶ 9.

    6.  Officer Aguilar told plaintiff that he (plaintiff) was not the driver and that Aguilar was not speaking to him—however, plaintiff continued to ask Officer Aguilar why Aguilar had stopped

---

[3] The videos submitted as Exhibits to this Motion are accessible via VLC Media Player.

the vehicle. *Complaint*, at ¶¶ 10-11; *Answer*, at ¶ 10-11. Officer Aguilar repeatedly asked for plaintiff's identification, which plaintiff failed to produce. *See* **Exhibit B**, at 03:00 to 03:07; *see also Complaint*, at ¶¶ 11-12; *Answer*, at ¶ 11-12.

7. Instead of producing identification, plaintiff repeatedly asked why Officer Aguilar stopped the vehicle. **Exhibit B**, at 03:00 to 03:07; *see also Complaint*, at ¶ 13; *Answer*, at ¶ 13. This interfered with Officer Aguilar's ability to interact with Lujan and investigate the traffic stop by dividing Officer Aguilar's attention between Lujan and plaintiff. **Exhibit A**, *supra*, at ¶ 6.

8. Officer Aguilar told plaintiff that if he did not comply with Aguilar's commands, he would be placed under arrest. **Exhibit B**, at 03:07 to 03:11; *see also Complaint*, at ¶ 15; *Answer*, at ¶ 15. Plaintiff did not comply with Aguilar's commands. **Exhibit B**, at 3:07-3:13.

9. Officer Aguilar commanded plaintiff out of the back seat of the vehicle, handcuffed plaintiff with his arms behind his back, turned plaintiff around, and began to escort plaintiff towards his patrol unit. **Exhibit B**, at 03:11 to 03:52; *see also Complaint*, at ¶ 16; *Answer*, at ¶ 16. While Aguilar did so, plaintiff flippantly continued to ask why Aguilar stopped Teshia Lujan's car. **Exhibit B**, at 03:11 to 03:30.

10. As shown by his dash camera video, Officer Loomis arrived on scene while Officer Aguilar was interacting with plaintiff and Teshia Lujan, just as Officer Aguilar arrested plaintiff. *Loomis Dash Camera Video*, submitted herewith as **Exhibit C**, at 00:57 to 01:25; *see also* **Exhibit B**, at 03:40 to 03:46.

11. On August 4, 2014, Officer Aguilar—not Officer Loomis—filed a Criminal Complaint against plaintiff charging him with Resisting/Evading a Police Officer and Concealing Identity.

3

*See generally Criminal Complaint*, attached hereto as **Exhibit D**. In the criminal complaint, Officer Aguilar recited a statement of facts consistent with what is depicted in his dash camera video. *Compare* **Exhibit D**, pp.1-2, *with* **Exhibit B**, *supra*, at 00:00 to 03:52. The Curry County Magistrate Court Judge determined that probable cause existed to support the criminal charges filed against plaintiff. *See* **Exhibit D**. pp.2-3.

## II.   *Argument and Authorities*

The threshold inquiry in any 42 U.S.C. § 1983 suit requires that the Court "identify the specific constitutional right" at issue. *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). After pinpointing that right, the Court still must determine the elements of, and rules associated with, an action seeking damages for its violation. *Manuel*, 137 S.Ct. at 920 (citing *Carey v. Piphus*, 435 U.S. 247, 257-258 (1978)); *see also Albright*, 510 U.S. at 270 n.4 (there must be some "constitutional peg on which to hang" a claim). Where, as here, a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision. *See U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Mothershed Bey v. City of Okla. City*, 2017 WL 2455160, *2 (W.D. Okla. June 6, 2017) (unpublished); *cf. Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (turning to an analysis of substantive due process in consideration of an excessive force claim only after finding that the Fourth and Eighth Amendments did not apply); *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). As discussed herein, plaintiff's Section 1983 claims in this case are governed solely by the Fourth Amendment.

Additionally, the primary factual record of this case is controlled by Officer Brent

4

Aguilar's dash camera video recording. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2009) (quoting *Scott*, 550 U.S. at 380); *see also Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1207 (10th Cir. 2017) ("we cannot ignore clear, contrary video evidence in the record depicting the events as they occurred"). Under *Scott*, no reasonable jury can credit the contrary testimony of a plaintiff's witness over the evidence provided by a video. *See Maestas v. City of Albuquerque*, No. CV-15-0053 MCA/KK, Doc. No. 48, Mem. Op. and Order, p.4 n.2 (D.N.M. Sep. 30, 2015) (unpublished) (citing *Scott*, 550 U.S. at 380-81); *see also Rhoads v. Miller*, 352 F. App'x 289, 291-92 (10th Cir. Nov. 5, 2009) (unpublished); *Lymon v. Aramark Corp.*, 728 F.Supp.2d 1222, 1249 (D.N.M. 2010), *aff'd*, 499 F. App'x 771 (10th Cir. Oct. 11, 2012); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (the Court "need not rely on plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the video'"); *Mitchell v. Schlabach*, 864 F.3d 416, 418 (6th Cir. 2017) ("[t]he crucial facts at the scene of the shooting were recorded on the officer's dashboard camera, and our decision in this case turns in large measure on this evidence"). Under the fact record as controlled by the dash camera video, Defendants are entitled to summary judgment on plaintiff's claims as set forth herein.

A.  Plaintiff Cannot Maintain his Fourth Amendment "Unlawful Seizure" Claim

Plaintiff purports to state two claims in the second count ("Violations of 42 U.S.C. [sic]

5

1983") in his Complaint. In Paragraph 57 of his Complaint, plaintiff claims that the Officers "violated 42 U.S.C. [sic] 1983 by seizing" plaintiff "under color of state law and by placing him under arrest without a warrant or probable cause in violation of the Fourth Amendment to the United States Constitution."[4] However, plaintiff's arrest in this case was not clearly unlawful.

First and foremost, Officer Aguilar properly stopped and investigated the speeding in car in which plaintiff was travelling on August 3, 2014. Under NMSA 1978, § 29-1-1 (1979), it is "the duty of every sheriff, deputy sheriff, constable and *every other peace officer* to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware" (emphasis supplied). It is also the duty of every such officer "to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken." *Id.* Under NMSA 1978, § 3-13-2(A)(4) (1988), municipal police officers must, within the municipality, suppress all breaches of the peace, apprehend all disorderly persons, pursue and arrest any person fleeing from justice, and apprehend any person

---

[4] Notably, though he purports to state a battery claim under the NMTCA, plaintiff does not plead—or even *mention*—any "excessive force" claims in his Complaint, particularly in the second count of his Complaint. *See generally* Doc. No. 1-1, at ¶¶ 56-60. In order to state a claim, a plaintiff must set forth the essential elements of his/her cause of action in the Complaint; failure to do so results in dismissal. *See*, *e.g.*, *Acosta Orellana v. Croplife Int'l*, 711 F.Supp.2d 81, 112 (D.D.C. 2010) (claim for agency liability dismissed for failure to adequately plead essential element of control); *Hayden v. Coppage*, 533 F.Supp.2d 1186, 1198 (M.D. Ala. 2008) (dismissing claim because the plaintiff's "failure to allege an essential element of his § 1985(3) claim is a failure to comply with the liberal pleadings requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure"); *Gyene v. Steward Fin., Inc.*, 2013 WL 146191, *7 n.14 (C.D. Cal. Jan. 11, 2013) (unpublished) (fraud in concealment claim dismissed for failure to allege essential element of claim); *Muhammad v. Bethel-Muhammad*, 2012 U.S. Dist. LEXIS 70326, *17 (S.D. Ala. May 21, 2012) (unpublished) (quoting *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted)).

in the act of violating the laws of the state or the ordinances of the municipality. *See also City of Roswell v. Smith*, 2006-NMCA-040, ¶ 6. 139 N.M. 381. In the discharge of his or her proper duties, a municipal police officer has the same powers as sheriffs in similar cases. *See* NMSA 1978, § 3-13-2(B). Under NMSA 1978, Section 4-41-2, the sheriff is empowered to, *inter alia*, "apprehend and commit to jail, all felons and traitors, and cause all offenders to keep the peace." Taken together, these statutes "generally direct [police] officers to take steps necessary to prosecute suspected criminals." *See Weinstein v. City of Santa Fe*, 1996-NMSC-021, ¶ 34, 121 N.M. 646, 655.

As shown in the dashcam video, Teshia Lujan sped through a red light, and Officer Aguilar stopped her after observing this crime. A traffic stop constitutes a seizure under the Fourth Amendment and is constitutionally valid if it is reasonable. *See U.S. v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). A stop is valid if it is "based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* (quotation omitted). "[A] routine traffic stop is a relatively brief encounter and is more analogous to a so-called *Terry*[5] stop...than to a formal arrest." *Id.* at 1286-87 (quotations omitted); *see also U.S. v. Gonzales*, 535 F.3d 1174, 1181 (10th Cir. 2008); *Garcia v. Armijo*, 2012 WL 13076235, *5 (D.N.M. Sep. 25, 2012) (unpublished) (Armijo, J.).

Officer Aguilar observed Teshia Lujan traveling in excess of the posted speed limit and failing to stop at a red light—as such, his *Terry* stop of Lujan's vehicle (in which plaintiff was a passenger) was wholly justified. *See U.S. v. Winder*, 557 F.3d 1129, 1135 (10th Cir. 2009) ("[o]nce

---

[5] *See Terry v. Ohio*, 392 U.S. 1, 19-20 (1968).

an officer observes a traffic or equipment violation, a *Terry* stop is objectively justified, regardless of the detaining officer's subjective motives" (internal quotation marks and citation omitted)). Officer Aguilar observed a traffic violation and therefore, had probable cause to initiate the traffic stop. *See U.S. v. Jackson*, 235 F. App'x 707, 710 (10th Cir. 2007); *U.S. v. Baldenegro*, 2011 WL 13285417, *6 (D.N.M. June 17, 2011) (unpublished) (Armijo, J.). An investigative detention—i.e. a *Terry* stop—occurs when an officer stops and briefly detains an individual "in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)); *see also Painter v. Wells Fargo Bank, N.A.*, 2009 WL 10681579, *6 (D.N.M. Mar. 31, 2009) (unpublished) (Armijo, J.). For an investigative detention to be lawful, the officer need only have "reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Oliver*, 209 F.3d at 1186 (citations and quotation marks omitted); *Painter*, 2009 WL 10681579, *6.

Moreover, once he initiated the stop of Teshia Lujan's vehicle, Officer Aguilar was justified in ordering any of the vehicle's occupants—including plaintiff—to get out of the vehicle. "[T]raffic stops are inherently dangerous to police officers." *See Seidel v. Crayton*, 2017 WL 4737254, *8 (D.N.M. Oct. 19, 2017) (unpublished) (citing *U.S. v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001) (en banc) ("[t]he terrifying truth is that officers face a very real risk of being assaulted with a dangerous weapon each time they stop a vehicle"), *overruling on other grounds recognized in U.S. v. Stewart*, 473 F.3d 1265 (10th Cir. 2007)). Consequently, an officer conducting a lawful traffic stop may, as a safety measure, order a passenger to exit the vehicle. *Maryland v. Wilson*,

519 U.S. 408, 414-15 (1997); *see also U.S. v. Rumley*, 588 F.3d 202, 206 (4th Cir. 2009); *Jones v. Chapman*, 2017 WL 2472220, *18 (D. Md. June 7, 2017) (unpublished). The Supreme Court reasoned in *Wilson* that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car," *see* 519 U.S. at 414, and "the additional intrusion on the passenger is minimal." *Id.* at 415; *see also U.S. v. Robinson*, 846 F.3d 694, 698–99 (4th Cir. 2017) (recognizing the increased risk to officers when a traffic stop involves one or more passengers); *cf. Holt*, 264 F.3d at 1223.

Under clearly established law, a police officer may, as a matter of course, order any and all persons in a lawfully-stopped vehicle to exit the vehicle. *See, e.g.*, *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (per curiam); *Holt*, 264 F.3d at 1222 ("[a]n officer...may order the driver *and passengers* out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger") (emphasis supplied); *U.S. v. Ladeaux*, 454 F.3d 1107, 1110 (10th Cir. 2006); *Wilson v. Village of Los Lunas*, 572 F. App'x 635, 641 (10th Cir. July 22, 2014) (unpublished); *U.S. v. Moorefield*, 111 F.3d 10, 12-13 (3d Cir. 1997); *Castaldo v. Horne*, 2017 WL 2869420, *3 (D. Utah July 5, 2017) (unpublished) ("Defendant Horne was acting lawfully and did not violate any constitutional right when he asked Plaintiff to exit her vehicle"). "[W]hile being required to get into or out of a vehicle during a valid traffic stop constitutes a 'mere inconvenience', it does not seriously intrude on any constitutionally protected right." *Hackett v. Artesia Police Dep't*, 2009 WL 10681494, *8 (D.N.M. Sep. 23, 2009) (unpublished) (Armijo, J.), *aff'd*, 379 F. App'x 789 (10th Cir. May 27, 2010) (unpublished). It was reasonable, for officer safety reasons, to ask plaintiff to get out of the vehicle, particularly after plaintiff continuously

interrupted and interfered with Officer Aguilar's attempt to investigate Teshia Lujan's traffic violation. *Hackett*, 2009 WL 10681494, *8. Ordering plaintiff to get out of the car after the lawful traffic stop does not constitute a Fourth Amendment violation. *Id.*

Additionally, it was reasonable for Officer Aguilar to request that plaintiff produce his identification. "[I]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Judicial Court of Nevada*, 542 U.S. 177, 185 (2004); *see also INS v. Delgado*, 446 U.S. 210, 216 (1984) ("interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure"); *cf. Mocek v. City of Albuquerque*, No. CV-11-1009 JB/KBM, Doc. No. 49, Mem. Op. and Order, pp.104-05 (D.N.M. Jan. 14, 2013) (unpublished), *aff'd*, 813 F.3d 912 (10th Cir. 2015). Other courts have applied these principles in upholding officer requests for identification from passengers in a vehicle stopped for a traffic violation, even when there is no particularized suspicion that the passengers are violating the law. *See*, *e.g.*, *U.S. v. Fernandez*, 600 F.3d 56, 60 (1st Cir. 2010) ("police requests for identifying information typically do not trigger Fourth Amendment concerns"); *Stufflebeam v. Harris*, 521 F.3d 884, 888 (8th Cir. 2008) ("a police officer does not violate the Fourth Amendment by inquiring into the identity of a vehicle's passenger during the course of a lawful traffic stop, even absent reasonable suspicion that the passenger has committed a crime"); *U.S. v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) ("[t]he police may ask people who have legitimately been stopped for identification without conducting a [separate] Fourth Amendment search or seizure"); *U.S. v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007) ("[i]f an officer may 'as a matter of course' and in the interest of personal

10

safety order a passenger physically to exit the vehicle, he may surely take the minimally intrusive step of requesting passenger identification") (citation omitted).

Then, once plaintiff failed to produce identification (after having repeatedly interrupted Officer Aguilar's investigation of Teshia Lujan), Officer Aguilar was justified in arresting plaintiff. A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). In evaluating whether the events leading up to an arrest amount to probable cause, the Court asks whether an objectively reasonable officer could conclude that the historical facts at the time of the arrest amount to probable cause. *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)); *see also D.C. v. Wesby*, 138 S.Ct. 577, 586 (2018). Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man to believe that the suspect has committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964) "[I]n determining whether probable cause exists, the courts must apply the 'totality of circumstances' test." *Brierley v. Schoenfeld*, 781 F.2d 838, 841 n.1 (10th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). "This is an objective standard," and, "[i]mportantly, probable cause does not require facts sufficient for a finding of guilt." *Boydston v. Isom*, 224 F. App'x 810, 814 (10th Cir. 2007). Probable cause "is not a high bar." *Kaley v. United States*, 34 S.Ct. 1090, 1103 (2014); *Wesby*, 138 S.Ct. at 586.

Substantively, the question of whether probable cause existed in light of the factual record does not require proof beyond reasonable doubt, or even a preponderance of the evidence. See

*Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011), *cert. denied*, 133 S.Ct. 645 (2012). It does not even require the suspect's guilt to be "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983); *see also U.S. v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011). Instead, the relevant question is whether a "substantial probability" existed that the suspect committed the crime, *see Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996), requiring something "more than a bare suspicion." *Ludwig*, 641 F.3d at 1252 (quoting *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir.1999)); *see also Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) ("[p]robable cause only requires a probability of criminal activity, not a prima facie showing of such activity"). Because probable cause for a warrantless arrest is analyzed by reference to the circumstances confronting the arresting officer at the time of the seizure, "the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges or acquittal." *Summers v. Utah*, 927 F.2d 1165, 1166-67 (10th Cir. 1991) (citations omitted); *see also Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Hubbert v. City of Moore*, 923 F.2d 769, 773 (10th Cir. 1991) ("[w]hether the jury eventually convicts the defendant of the crime has no bearing on the question whether the officer had probable cause to make the arrest").

In the context of an unlawful arrest claim, the Court must ask "whether officers *arguably* had probable cause" to make the arrest (emphasis supplied). *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). This Court may presume that Officer Aguilar acted within his authority unless and until facts are shown indicating that he arrested plaintiff without arguable probable cause. *See Grauerholz v. Adcock*, 51 F. App'x 298, 301 (10th Cir. Nov. 20, 2002) (unpublished). The arrest of plaintiff was lawful if the facts available to Officer Aguilar furnished arguable

12

probable cause to believe that plaintiff had committed *any* crime for which he could be arrested. *See*, *e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("[a]ll that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground) (emphasis in original); *U.S. v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) ("the probable cause inquiry is not restricted to a particular offense, but rather requires merely that the officer had reason to believe that a crime—any crime—occurred"); *see also Steigelman v. McDaniel*, No. CV-13-1076 MV/KBM, Doc. No. 38, Mem. Op. and Order, p. 5 (D.N.M. July 16, 2015) (unpublished), *aff'd*, 634 F. App'x 667 (10th Cir. Feb. 5, 2016) (unpublished).

Moreover, in *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), the Supreme Court noted that, "if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *See also Marshall v. Columbia Lea Regional Hosp.*, No. CV-99-1363 LH/LCS, Doc. No. 128, Mem. Op. and Order, pp.6-7 (D.N.M. June 18, 2002) (unpublished) (finding that municipal police officer's arrest of plaintiff for evading a police officer was supported by probable cause and did not violate the Fourth Amendment); *cf. Castillo v. City of Hobbs*, No. CV-00-1417 JP/LCE, Doc. No. 58, Mem. Op. and Order, pp.5-7 (D.N.M. Dec. 28, 2001) (unpublished) (granting summary judgment on plaintiff's illegal seizure and excessive force claims and finding that "a person can be arrested, handcuffed, and taken into custody under state law for

violating even minor traffic offenses because such laws are 'the laws of the state'").

An officer must have "reasonable suspicion" that an individual was involved in "some predicate, underlying crime" in order to arrest the individual solely for concealing identity. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008); *Romero v. Schum*, 413 F. App'x 61, 64 (10th Cir. Feb. 15, 2011) (unpublished); *see also Brunson v. McCorkle*, No. CV-11-1018 JH/LAM, Doc. No. 89, Am. Mem. Op. and Order, p.10 (D.N.M. Sep. 30, 2013) (unpublished). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." *U.S. v. Alcaraz-Arellano*, 441 F.3d 1252, 1260 (10th Cir. 2006) (internal quotations omitted). "For reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct;' he or she simply must possess 'some minimal level of objective justification' for making the stop." *U.S. v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *U.S. v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)). "Evidence falling 'considerably short' of a preponderance satisfies this standard." *Id.* (quoting *U.S. v. Arvizu*, 534 U.S. 266, 274 (2002)).

Chapter 30, Article 22 of the New Mexico Statutes Annotated governs "Interference with Law Enforcement." NMSA 1978, § 30-22-1(D) (1981) prohibits, *inter alia*, "resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties." Under New Mexico law, resisting, evading, or obstructing an officer primarily consists of physical acts of resistance. *See*, *e.g.*, *State v. Wade*, 1983-NMCA-084, ¶ 6, 100 N.M. 152, 153. However, resisting can also include failing to comply with an officer's lawful demands. *See City of Espanola v. Archuleta*, 2010 WL 3997984, *4 (Ct. App. Feb. 5, 2010) (unpublished) (Section 30-22-1(D) "include[s] a

14

prohibition of a defendant's active and defiant refusal to comply with lawful officer demands"); *McGarry v. Bd. of Cnty. Comm'rs for Cnty. of Lincoln*, 294 F.Supp.3d 1170, 1203-04 & n.19 (D.N.M. 2018). Additionally, "plainly obstreperous and contumacious behavior" can furnish probable cause to arrest an individual. *See Steigelman v. McDaniel*, *supra*, p.6; *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008).

Plaintiff was arrested for, and then charged with, concealing identity. "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer." NMSA 1978, § 30-22-3. "Section 30-22-3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 1999-NMCA-072, ¶ 12, 127 N.M. 472 (quoting *In re Suazo*, 1994-NMSC-070, 117 N.M. 785, 793). "The purpose of Section 30-22-3 is 'to provide police officers the minimal, essential information regarding identity so that they can perform their duties (not be 'hindered' in the 'legal performance of [their duties]').'" *Dawson*, 1999-NMCA-072, ¶ 12 (quoting *State v. Andrews*, 1997-NMCA-017, ¶ 6, 123 N.M. 95). Based upon the actions committed by plaintiff in his presence, Officer Aguilar had arguable probable cause to arrest and charge plaintiff under these statutes. As such, plaintiff's Fourth Amendment wrongful seizure claim must be dismissed as a matter of law.

In *Park v. Gaitan*, No. CV-11-987 KG/RHS, Doc. No. 77, Mem. Op. and Order (D.N.M. March 31, 2014) (unpublished), *aff'd*, 680 F. App'x 724 (10th Cir. Mar. 1, 2017) (unpublished),

sheriff's detectives arrested plaintiff on the charge of knowingly resisting a law enforcement officer. One of the Defendants, a detective who was dressed in plain clothes but who also had a badge and gun, questioned plaintiff about a surveillance video at plaintiff's place of business; the plaintiff refused to show the detective this video. *Park*, pp.4-5. The detective later returned with a search warrant, accompanied by other detectives and two uniformed sheriff's deputies. *Id.* p.5. Plaintiff again refused to show the detective his surveillance video—the detective and one of the deputies then physically removed plaintiff so that the search warrant could be executed. *Id.* pp.5-7. Plaintiff resisted by tensing his arms, bracing his legs and trying to pull his arms away. *Id.* p.7. The Defendants unsuccessfully tried to put plaintiff on the ground in a face down position, and then the detective gave a "knee strike" to the side of plaintiff's body to bring him down to the floor so he could be handcuffed. *Id.* Plaintiff's physical resistance to being escorted outside prompted the Defendant deputies to charge plaintiff with knowingly resisting an officer and to book him into jail. *Id.* Even viewing the evidence in the light most favorable to plaintiff, based upon the facts within the detective's knowledge, this Court concluded that a reasonable jury could find that the Defendants had probable cause to arrest plaintiff. *Id.* pp.16-17.

In the present case, when plaintiff interfered with Officer Aguilar's attempt to speak with/investigate Teshia Lujan and then refused to comply with Aguilar's lawful order for plaintiff to produce his identification, Aguilar had arguable probable cause (at the very least) to arrest plaintiff. *See Valencia v. DeLuca*, No. CV-13-930 JAP/WPL, Doc. No. 55, Mem. Op. and Order, p.35 (D.N.M. Aug. 26, 2014) (unpublished). Plaintiff's resistance and refusal to obey Officer Aguilar's lawful orders constituted "a legitimate reason for the decision to escalate the seizure into

a full custodial arrest." *See Wilson v. Village of Los Lunas*, No. CV-10-237 JEC/RLP, Doc. No. 28, Mem. Op. and Order, p.10 (D.N.M. Dec. 2, 2010) (unpublished) (quoting *State v. Bricker*, 2006-NMCA-052, ¶ 24, 139 N.M. 513). Like *Grauerholz*, *supra*, 51 F. App'x at 300, this case "presents the classic situation in which a plaintiff's own actions in reaction to a legitimate law enforcement encounter…justif[y] the subsequent actions of the law enforcement officers involved" (internal citation omitted). Even *if* plaintiff's arrest was somehow unlawful (which, as discussed in detail above, it was not), plaintiff has no constitutional right to resist an allegedly unlawful arrest. *See*, *e.g.*, *James v. Chavez*, 511 F. App'x 742, 747 (10th Cir. Feb. 19, 2013) (unpublished) (homeowner may not resist "an unlawful arrest or entry into his home, simply because of its unlawfulness, by individuals he recognizes to be the police") (citing *State v. Doe*, 1978-NMSC-072, ¶ 11, 92 N.M. 100 ("a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal"); *State v. Phillips*, 2009-NMCA-021, ¶ 19, 145 N.M. 615 ("forcible resistance to an officer discharging his duties is unlawful regardless of whether or not the officer is acting within his actual legal authority in seizing an individual")); *see also La v. Hayducka*, 269 F.Supp.2d 566, 577 (D.N.J. 2003); *Kilhefer v. Plowfield*, 409 F.Supp. 677, 680 (E.D. Pa. 1976). In sum, the Officers did not wrongfully arrest or seize plaintiff on August 3, 2014, and Defendants are thus entitled to summary judgment on plaintiff's Fourth Amendment claim.

B.  Plaintiff Cannot Maintain Any Claim Under the Fourteenth Amendment

In Paragraph 58 of his Complaint, plaintiff alleges that the Officers "violated 42 U.S.C. [sic] 1983 by assaulting" plaintiff "under color of state law, without justification and due process

of law, in violation of the Fourteenth Amendment to the United States Constitution." However, the facts as alleged by plaintiff for his assault and battery claims form the basis for state law tort claims, and not a Fourteenth Amendment due process claim. *Schmitz Land Co., LLC v. Rio Arriba Bd. of Cnty. Comm'rs*, 2011 WL 13289860, *4-*5 (D.N.M. Mar. 22, 2011) (unpublished) (citing *Williams v. Berney*, 519 F.3d 1216, 1220, 1223 (10th Cir. 2008)); *see also Littlefield v. Piedra Vista High Sch. Admin.*, 2015 WL 13658642, *6 (D.N.M. Aug. 21, 2015) (unpublished). "An assault—standing alone—does not suffice to make out a constitutional substantive due process claim." *Williams*, 519 F.3d at 1223; *see also Thurman v. Steidley*, 2017 WL 2435284, *5-*6 (N.D. Okla. June 5, 2017) (unpublished).

Plaintiff cannot maintain any Fourteenth Amendment due process claims because his substantive claims are based on an allegedly unlawful seizure/arrest. *See*, *e.g.*, *Martinez v. Trujillo*, No. CV-02-771 KBM/LCS, Doc. No. 45, Mem. Op. and Order, p.11 n.10 (D.N.M. June 18, 2003) (unpublished). Here, plaintiff's allegations focus on the Clovis Officers' allegedly illegal seizure/arrest of plaintiff–therefore, plaintiffs' substantive claims are covered by the Fourth Amendment. Accordingly, plaintiff's Fourteenth Amendment claim, which arises out of the same circumstances as his purportedly "false" arrest, must be dismissed as duplicative. *See*, *e.g.*, *Snow v. Village of Chatham*, 84 F.Supp.2d 322, 327 (N.D.N.Y. 2000) (dismissing Fourteenth Amendment claim "since the Fourth Amendment, and not some generalized concept of substantive due process, provides the constitutional foundation for false arrest claims"); *see also Raymond v. Bunch*, 136 F.Supp.2d 71, 81 (N.D.N.Y. 2001) (dismissing substantive due process claim as duplicative of excessive force claim); *Graham v. Poole*, 476 F.Supp.2d 257, 261 (W.D.N.Y. 2007)

(dismissing the plaintiff's claims under Fifth and Fourteenth Amendments where Eighth Amendment covered claims); *Hicks v. Oglesby*, 2016 WL 7473126, *3 (S.D. W. Va. Dec. 28, 2016) (unpublished) ("the Court may not engage in a separate substantive due process analysis where Plaintiff alleges a Fourth Amendment claim arising from the same abusive government conduct"). Defendants are entitled to summary judgment on this claim.

C.  Defendants are Entitled to Summary Judgment on plaintiff's Misuse/Malicious Abuse of Process Claim

Moreover, plaintiff cannot maintain his state law claim for Misuse of Process/Malicious Abuse of Process against these Defendants. The elements of a claim of malicious abuse of process in New Mexico are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694. An improper use of process may be shown by, *inter alia*, filing a complaint without probable cause. *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 12, 142 N.M. 150. "[P]robable cause relates to the complaint as a whole, and the original plaintiff need not show favorable termination of each individual claim to establish an effective defense to a subsequent suit for malicious abuse of process." *Fleetwood Retail Corp. v. LeDoux*, 2007-NMSC-047, ¶ 20. Notably, this tort is construed narrowly in order to protect the right of access to the courts, and as such it is disfavored. *Id.* ¶ 19 (citations omitted).

To sustain a claim for malicious abuse of process, plaintiff must either demonstrate that the Defendants filed a criminal case against him without probable cause or show a procedural impropriety. Plaintiff cannot do so in this case: as discussed above, the charges that were filed

against plaintiff were supported by probable cause, as found by the Curry County Magistrate Court Judge. To have probable cause to initiate criminal proceedings against plaintiff, the Officers must have held a "reasonable belief in the validity of the allegations of fact or law of the underlying claim." *See DeVaney*, 1998-NMSC-001, ¶ 27. The Officers had such a reasonable belief based upon the undisputable facts of this case—as such, Defendants are entitled to summary judgment on this claim as well.

### D.  Officers Aguilar and Loomis are Entitled to Qualified Immunity

"Law enforcement officers are...entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs." *Kerns v. Bader*, *supra*, 663 F.3d at 1180. In analyzing the qualified immunity defense, this Court must consider if plaintiffs' allegations establish a constitutional violation, and if plaintiffs have shown a constitutional violation, the Court must determine whether the law was clearly established at the time the alleged violation occurred. *See*, *e.g.*, *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). To overcome the defense of qualified immunity, a plaintiff must carry the "heavy burden" of showing the violation of a "clearly established" constitutional right (emphasis supplied). *Id.* To determine whether conduct violates clearly established law, the Court "must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867 (2017). Plaintiffs may not simply cite to a general right to be free from unlawful police conduct; they must identify case law finding a constitutional violation under the particular circumstances of the case. *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004). The analysis is limited to "the facts that were knowable

to the defendant officers" at the time they engaged in the conduct in question. *White v. Pauly*, 137 S.Ct. 548, 550 (2017). Facts learned after the incident ends–even facts that might otherwise support denying qualified immunity–are not relevant. *See Hernandez v. Mesa*, 137 S.Ct. 2003, 2007 (2017).

*1. The Officers Did Not Violate plaintiff's Constitutional Rights*

In wrongful arrest cases, an officer is entitled to qualified immunity if "a reasonable officer could have believed that probable cause existed to make an arrest." *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007). In order to overcome the defense of qualified immunity, the plaintiff must demonstrate that it would be "readily apparent to any reasonable officer" that, under clearly established law, he had no basis to affect an arrest under the circumstances. *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011). Officers are immunized from any suit arising from an allegedly unlawful arrest if there was "arguable probable cause" to arrest the plaintiff. *See*, *e.g.*, *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("[i]n the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct") (internal quotation marks omitted); *Shimomura v. Carlson*, 811 F.3d 349, 356-57 (10th Cir. 2015). The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Court has] indicated that in such cases those officials–like other officials who act in ways they reasonably believe to be lawful–should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Thus, even a

21

reasonable but mistaken belief that there is probable cause entitles an officer to qualified immunity. *Morris v. Noe*, 672 F.3d 1185, 1194 (10th Cir. 2012); *see also Stonecipher*, 759 F.3d at 1141; *Mocek*, *supra*, 813 F.3d at 925-30; *Wesby*, *supra*, 138 S.Ct. at 591. This is an objective standard. *Morris*, 672 F.3d at 1194 (stating that arrest is lawful if there is probable cause for some offense, even if officer subjectively intended to base arrest on another offense). An officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Wren v. U.S.*, 517 U.S. 806, 813 (1996).

An officer is entitled to qualified immunity if the facts within his knowledge would have led a reasonable officer to conclude plaintiff concealed his identity in violation of NMSA 1978, § 30-22-3. *Brunson*, *supra*, p.13 (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995)). "In order to carry his burden at summary judgment, therefore, Plaintiff had to establish that a reasonable officer would not have believed based on the facts and circumstances known to Defendant that he had probable cause to arrest Plaintiff for concealing identity." *Id.* There is evidence showing that a reasonable officer in the Clovis Officers' position would have believed that plaintiff was trying to hinder or interrupt the Officers in the legal performance of their duties. *Cf. Albright*, 51 F.3d at 1537; *Brunson*, p.13. As such, the Officers are entitled to qualified immunity on plaintiff's claims under 42 U.S.C. § 1983.

## 2. *There is No Clearly Established Law Governing This Case*

The qualified immunity analysis requires a consideration of the particularized facts of the case, not broad general propositions: otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of

extremely abstract rights." *White v. Pauly*, *supra*, 137 S.Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)); *cf. Pyle v. Woods*, 874 F.3d 1257, 1263-64 (10th Cir. 2017) (plaintiffs cannot merely identify an abstract Fourth Amendment right). The burden of identifying clearly established law rests with plaintiff. *See Hilliard v. City & Cnty. of Denver*, 930 F.2d 1516, 1518 (10th Cir.1991); *see also Carabajal v. City of Cheyenne*, *supra*, 847 F.3d at 1208; *Garcia v. Escalante*, 2017 WL 443610, *4 (10th Cir. Feb. 2, 2017) (unpublished) ("[p]laintiff must present controlling authority that 'squarely governs the case here,'...and that would have put 'beyond debate'...the question" presented in the case) (citations omitted); *Malone v. Bd. of Cnty. Comm'rs*, 2017 WL 3951706, *3 (10th Cir. Sep. 8, 2017) (unpublished) ("the parties do not cite, nor could we find, any Supreme Court or Tenth Circuit case that is sufficiently close factually to the circumstances presented here to establish clearly the Fourth Amendment law that applies to our case"). Plaintiffs must establish more than a generalized principle of constitutional law. *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. Nov. 12, 2015). Indeed, "the Supreme Court has sent out unwritten signals to the lower courts that factually identical or a highly similar factual case is required for the law to be clearly established." *Nelson v. City of Albuquerque*, 283 F.Supp.3d 1048, 1107 n.44 (D.N.M. 2017).

The Supreme Court has "repeatedly told courts...not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011) (citation omitted); *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013); *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014); *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015); *see also Callahan v. Unified Gov't of Wyandotte Cnty./Kansas City*, 806 F.3d 1022, 1027-28 (10th Cir. 2015). "Such specificity is especially important in the

23

Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine...will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S.Ct. at 308 (quoting *Saucier v. Katz*, *supra*, 533 U.S. at 205); *see also Ziglar*, *supra*, 137 S.Ct. at 1866 ("[b]y its plain terms, the [Fourth] Amendment forbids unreasonable searches and seizures, yet it may be difficult for an officer to know whether a search or seizure will be deemed reasonable given the precise situation encountered"). In conducting this analysis, this Court must "define the clearly established right at issue on the basis of the *specific context* of the case" (emphasis supplied). *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017) (quoting *Tolan*, 134 S.Ct. at 1866).

In *White v. Pauly*, the Supreme Court set forth an exacting standard for plaintiffs to satisfy their burden of locating clearly established law. *See*, *e.g.*, *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1017 (9th Cir. 2017); *Zinn v. Vill. of Sauk Vill.*, 2017 WL 783001, *4 (N.D. Ill. Mar. 1, 2017) (unpublished); *May v. San Mateo Cnty.*, 2017 WL 1374518, *8 (N.D. Cal. Apr. 15, 2017) (unpublished); *Kane v. Barger*, 2017 WL 3535010, *8 (W.D. Pa. Aug. 17, 2017) (slip op.). In wrongful arrest/imprisonment cases, the relevant question is not whether individuals have a constitutional right to be arrested only on the basis of probable cause, but "whether it was beyond debate" that this particular arrest "lacked legal justification." *Griego v. City of Albuquerque*, No. CV-13-929 JB/KBM, Doc. No. 53, Mem. Op., pp.48-49 (D.N.M. Oct. 20, 2015) (unpublished) (citing *Kerns v. Bader*, *supra*, 663 F.3d at 1183)). In the present case, it was far from "beyond debate" that, as of August 3, 2014, Officers Aguilar and Loomis were precluded from arresting plaintiff under the circumstances that confronted them that night. As such, the Officers are entitled

to qualified immunity on all Section 1983 claims in this case. *See Garcia v. Escalante*, *supra*, 2017 WL 443610, *6; *Thomas v. Kaven*, 2017 WL 3098266, *4 (D.N.M. June 14, 2017) (unpublished). Because plaintiff can point to no clearly established case law squarely governing the facts of this case, the Officers are entitled to qualified immunity and summary judgment.

      **WHEREFORE**, Defendants respectfully request that this honorable Court grant their First Motion for Summary Judgment, dismiss the claims discussed above with prejudice, and for whatever further relief this Court sees fit.

      Respectfully submitted,

      JARMIE & ASSOCIATES

      By  */s/ Cody R. Rogers*
         Cody R. Rogers
         Mark D. Standridge
         ***Attorneys for Defendants***
         P.O. Box 344
         Las Cruces, NM 88004
         (575) 526-3338
         crogers@jarmielaw.com
         mstandridge@jarmielaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed through the CM/ECF system which caused all counsel of record to be served by electronic means on this 3rd day of August 2018.

      */s/ Cody R. Rogers*
         Cody R. Rogers