# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JORGE RAY CORONA,

    Plaintiff,

v.                                          CV No. 17-805 JCH/CG

CITY OF CLOVIS, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion for Permission to Amend First Amended Complaint* ("Motion to Amend"), (Doc. 55-1), filed September 24, 2018 and *Defendants' Response in Opposition to Plaintiff's Motion for Permission to Amend First Amended Complaint* ("Response to Motion to Amend"), (Doc. 60), filed October 9, 2018. After considering the parties' filings, the record, and the relevant law, the Court **FINDS** that Plaintiff's *Motion for Permission to Amend First Amended Complaint*, (Doc. 55-1), is not well taken and should be **DENIED WITHOUT PREJUDICE**.

### I. Factual Background

On August 3, 2014, Defendant Brent Aguilar, a police officer with the City of Clovis Police Department, conducted a routine traffic stop in Curry county, New Mexico. (Doc. 1-2 at 224-25). Upon approaching the driver's side of the stopped vehicle, Officer Aguilar asked the driver to roll down the left passenger-side window. (Doc. 1-2 at 225). The driver of the vehicle, Keisha Lujan, complied with Officer Aguilar's request and continued searching for her driver's license, proof of insurance, and vehicle registration. *Id.* Plaintiff Jorge Corona was seated in the back-left passenger seat of Ms. Lujan's vehicle, and as Ms. Lujan searched for her documentation, he began asking Officer Aguilar why they had been pulled over. *Id.* Officer Aguilar stated that he was not

speaking to Mr. Corona because he was not the driver of the vehicle. *Id.* Mr. Corona then continued asking Officer Aguilar why the vehicle had been stopped. *Id.*

After repeated questioning from Mr. Corona, Officer Aguilar asked Mr. Corona if he had any identification ("ID"). (Doc. 1-2 at 225). In response, Mr. Corona stated he did not have ID and continued to ask Officer Aguilar why the vehicle had been pulled over. *Id.* Eventually, Officer Aguilar stated that if Mr. Corona did not produce ID, he would be placed under arrest for concealing identification. *Id.* After repeating that he did not have ID, Mr. Corona was ordered out of the vehicle and placed under arrest for concealing identification. *Id.* Officer Aguilar placed Mr. Corona in handcuffs and began walking him towards "the patrol units." (Doc. 1-2 at 225-26).

Mr. Corona alleges that while his hands were handcuffed behind has back, Officer Aguilar "slammed [him] facedown into the asphalt," "without warning," causing him serious bodily injury. (Doc. 1-2 at 226). After the attack, Mr. Corona alleges that Officer Aguilar "fabricated many aspects of his story," in his police report concerning the incident, including accusations that Mr. Corona "used abusive language towards him, tried to pull away from him on numerous occasions, and [] thrust his shoulder forward in a[n] [] aggressive manner." *Id.* In addition, Mr. Corona alleges that a fellow City of Clovis police officer, Defendant Travis Loomis, arrived on the scene before the attack occurred and helped Officer Aguilar "continue the prosecution of an innocent person by fabricating his police report and testimony to support a senior officer." (Doc. 1-2 at 228).

As a result of this incident, Officer Aguilar charged Mr. Corona with resisting, evading, or obstructing an officer, in violation of N.M.S.A. § 30-22-1, and concealing identity, in violation of N.M.S.A. § 30-22-3. *See* (Doc. 54 at 28-29). At trial, Mr. Corona was acquitted of all charges against him. (Doc. 54 at 14); *see also* (Doc. 54 at 41-42).

On August 1, 2016, Mr. Corona filed a complaint in the Ninth Judicial District of New Mexico alleging "assault, battery, wrongful arrest, prima facie tort, intentional infliction of emotional distress, pain and suffering, negligence, damages, misuse of process and malicious abuse of process," against the City of Clovis, the Clovis Police Department, and Officers Brent Aguilar and Travis Loomis "in their personal and official capacities." (Doc. 1-2 at 1). After a year of litigation in state court, Defendants removed the case to this Court on August 8, 2017. *See* (Doc. 1).

**II.     Order of Consideration of Motions**

As a preliminary matter, the Court notes that three motions are currently pending on the docket: *Defendants' First Motion for Partial Summary Judgment* ("Motion for Summary Judgment"), (Doc. 41), filed August 3, 2018; *Defendants' Motion for Partial Judgment on the Pleadings* ("Motion for Judgment on the Pleadings"), (Doc. 43), filed August 3, 2018; and the Motion considered in this Order, Plaintiff's Motion to Amend his Complaint, (Doc. 55-1).

After Defendants filed both their Motion for Summary Judgment and their Motion for Judgment on the Pleadings, Plaintiff filed a Motion to Amend, seeking to remedy a number of deficiencies in his Complaint that were illustrated by Defendants' Motions. Plaintiff's Second Amended Complaint, if permitted to be filed by the Court, would "supersede" his First Amended Complaint, rendering Defendants' Motions moot. *See Gilles v. U.S.*, 906 F.2d 1386, 1389 (10th Cir. 1990) ("[A] pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified.") (quoting 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.)); *Tierra Blanca High Country Youth Prog. v. Gonzales*, No. 15-850, 2017 WL 3420755, at *2 (D.N.M. March 20, 2017) (unpublished) ("[I]f the Second

3

Amended Complaint rectifies any [] deficiencies [in the First Amended Complaint], the Motion to Dismiss is moot."); *Gotfredson v. Larsen LP*, 432 F.Supp. 2d 1163, 1172 (D.Colo. 2006) (finding that the defendants' motions to dismiss were "technically moot" because they were directed at the plaintiff's first amended complaint which was "no longer operative" after he filed his motion to amend). As such, the Court will first address Plaintiff's Motion to Amend before ruling on Defendants' Motions.

## I.     Plaintiff's Motion to Amend

Federal Rule of Civil Procedure ("Federal Rule") 15(b) permits a party to amend his complaint with the opposing party's consent or with the court's permission. Consistent with Federal Rule 15, the court may refuse to grant a party leave to amend if there is a showing of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *See Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018). The court's discretion to deny leave must also be exercised in conjunction with Federal Rule 15(b)'s mandate to "freely give leave when justice so requires." Fed. R. Civ. P. 15(b).

In addition, when a movant seeks leave to amend after the court's scheduling order deadline has passed, Federal Rule 15(b) works in tandem with Federal Rule 16(b), requiring an additional showing of "good cause" to modify the court's scheduling order. *Chaara v. Intel Corp.*, No. 06-278, 2006 WL 4079030, at *4 (D.N.M. May 31, 2006) (unpublished) (*aff'd* 245 Fed. Appx. 784 (10th Cir. 2007) (unpublished)). To satisfy the requirements under Federal Rule 16(b), the movant must prove that he put forth "diligent efforts" to meet the scheduling order deadline and was not merely "careless" in his failure to timely amend. *Id.* at *5.

4

Indeed, an untimely filing of plaintiff's motion "is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) (affirming district court's denial of plaintiff's leave to amend when motion was filed four months late). Further, when a party seeks to amend his complaint while dispositive motions are pending, the court must be cautious of "an amendment whose purpose is to prevent termination of the case on a motion to dismiss or a motion on summary judgment." *Chaara*, No. 06-278, 2006 WL 4079030, at *5.

In the present matter, Plaintiff's Motion to Amend was filed more than ten months after the court's scheduling order deadline permitting amendments had passed. *See* (Doc. 17) and (Doc. 55-1). In his Motion to Amend, Plaintiff does not state why he is nearly a year late in filing his Motion, nor does he acknowledge that the deadline has expired. (Doc. 55-1). Rather, Plaintiff contends that while his First Amended Complaint satisfies New Mexico state law requirements, he did not have an opportunity to redraft the complaint to conform to the requirements of federal law after the case was removed to this Court. (Doc. 55-1 at 2-3). This argument falls far short of demonstrating "good cause" for delay as required under the Federal Rules.

Plaintiff's case has been pending before this Court since August 2017. *See* (Doc. 1). On September 15, 2017 Plaintiff's counsel attended a joint status conference to assist in drafting a provisional discovery plan with opposing counsel. (Doc. 12 at 1). On the first page of Plaintiff's submitted provisional discovery plan, it states "Plaintiff shall be allowed until **October 10, 2017** to move to amend the pleadings[…]." *See id.* (emphasis in original). Chief Magistrate Judge Carmen E. Garza subsequently held a Rule 16 Scheduling Conference to discuss the parties' discovery plan and set the case

5

on a 180-day discovery schedule, giving Plaintiff an additional month to amend his pleadings. (Doc. 17 at 2). Chief Magistrate Judge Garza then provided written notice of this deadline in her *Scheduling Order*, (Doc. 17 at 2), summarized the parties' conference in her *Clerk's Minutes*, (Doc. 16 at 1), and reminded Plaintiff in her *Order Adopting Joint Status Report* to refer to her *Scheduling Order* for a list of the discovery deadlines, (Doc. 18 at 1). In addition, the Court held frequent status and scheduling conferences to ensure the efficient resolution of this case, inquire on the status of discovery, and address any concerns the parties faced as litigation proceeded. *See* (Doc. 15); (Doc. 24); (Doc. 27); (Doc. 36). Plaintiff had ample time and opportunity after this case was removed to federal court to address the deficiencies in his Complaint.

In addition to the untimeliness of Plaintiff's Motion to Amend and its failure to demonstrate good cause, the Motion is plagued with procedural mistakes. First, Plaintiff filed his Motion to Amend as an attachment to his Response to Defendants' Motion for Summary Judgment, rather than filing it as a separate motion for the Court to consider on the docket. *See* (Doc. 55-1). Second, Plaintiff failed to make a good-faith effort to seek concurrence from opposing counsel, in direct contravention of the Local Rules of Civil Procedure for the District of New Mexico (the "Local Rules"). D.N.M.LR-Civ. 7.1(a). Third, Plaintiff did not attach a proposed amendment, again disregarding the Local Rules. D.N.M. LR-Civ. 15.1. In addition to being procedurally incorrect, Plaintiff's failure to attach his proposed Second Amended Complaint makes it impossible for the Court to adjudge Plaintiff's amended claims. This is particularly relevant here, where Plaintiff concedes that a number of his claims are either insufficiently pled or not actionable. Thus, even if the Court wanted to reach the merits of Defendants' Motions or otherwise seek to efficiently resolve this case, it has no amendments before it to consider.

Given these deficiencies, the Court is unable to adequately assess Plaintiff's Motion to Amend. Therefore, in the interest of justice, the Court will permit Plaintiff to refile his Motion to Amend by **March 19, 2019**. In his Motion to Amend, Plaintiff must attempt to demonstrate good cause for his untimely filing, comply with all procedural requirements under both the Federal Rules and Local Rules, and properly attach his Second Amended Complaint to the Motion. In addition, Plaintiff should adequately set forth in his Second Amended Complaint the claims that he is alleging against each named party and a short statement of fact that supports each claim. *See* Fed. R. Civ. P. 8(a). Plaintiff does not need to make detailed factual allegations, but at a minimum he must organize his Complaint in a manner that permits the Court to ascertain what claims are being alleged against which parties, what facts support those claims, and the relief Plaintiff seeks as permitted by those claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This inherently requires Plaintiff to only include claims in his Complaint which are cognizable under state or federal law. Plaintiff is encouraged to consult the Federal Rules and accompanying case law in drafting his Motion and the Second Amended Complaint.

If Plaintiff **does not** submit a revised Motion to Amend by the aforementioned date or if that Motion to Amend is denied for lack of good cause, the Court will consider Defendants' Motions as they apply to Plaintiff's First Amended Complaint. At that point, the Court will address the merits of Plaintiff's claims and dismiss the claims which Plaintiff concedes are not actionable under state or federal law. If Plaintiff **does** submit a timely revised Motion to Amend, Defendants may respond to the Motion to Amend in normal course.

## II. Conclusion

Consistent with the foregoing, the Court **FINDS** that Plaintiff's *Motion for Permission to Amend First Amended Complaint*, (Doc. 55-1), is **DENIED WITHOUT PREJUDICE** and Plaintiff may file a revised Motion to Amend his First Amended Complaint no later than **March 19, 2019**.

**IT IS SO ORDERED**.

_____
Honorable Judith C. Herrera
United States District Court Judge