# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JORGE RAY CORONA,

    Plaintiff,

v.                                              No. 2:17-cv-805 JCH/CG

CITY OF CLOVIS, CLOVIS POLICE
DEPARTMENT, OFFICER BRENT AGUILAR,
and OFFICER TRAVIS LOOMIS, in their official
capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion for Partial Judgment on the Pleadings* ("Motion for Judgment on the Pleadings") (ECF No. 43), filed August 3, 2018. The Court, having considered the motion, the briefs, the complaint, the record, and the relevant law, concludes that the motion should be granted.

### I.    FACTUAL BACKGROUND

When considering a motion for judgment on the pleadings, a court should accept as true and construe in the light most favorable to the non-moving party all facts pleaded in the complaint. *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004).

On August 3, 2014, at around 2:00 a.m., in Clovis, New Mexico, Defendant Officer Brent Aguilar ("Defendant Aguilar"), a police officer with the Clovis Police Department, stopped a vehicle suspected of running a red light and exceeding the speed limit. First Am. Compl. ¶¶ 3, 6-8, ECF No. 1-1. Defendant Aguilar approached the driver's side window of the vehicle and asked the driver, Keisha Lujan, for her driver's license, insurance, and registration. *Id.* ¶¶ 8-9.[1] Plaintiff

---

[1] The record refers to various spellings of Ms. Lujan's first name. The Court will refer to her as Ms. Lujan herein.

Jorge Corona was a passenger in the back-left passenger seat. *Id.* ¶ 9. Defendant Aguilar asked that the rear passenger window be rolled down. *Id.*

While Ms. Lujan was looking for her paperwork, Plaintiff Corona asked Defendant Aguilar why he had pulled them over. *Id.* Defendant Aguilar responded that he was not the driver and he was not speaking to him. *Id.* ¶ 10. Plaintiff continued to ask Defendant Aguilar the reason he had pulled them over. *Id.* ¶ 11. Defendant Aguilar asked Plaintiff if he had "ID," to which Plaintiff responded, "Nah. Why are you stopping us?" *Id.* Despite having informed him that he did not have identification, Defendant Aguilar continued to ask for Plaintiff's "ID." *Id.* ¶ 12. Each time, Plaintiff responded, "Why are you stopping us?" *Id.* ¶ 13. Finally, Defendant Aguilar told Plaintiff that if he did not produce his ID, he would be arrested for concealing ID. *Id.* ¶ 15.

Defendant Aguilar then ordered Plaintiff out of the vehicle, arrested him for concealing his identification, and handcuffed him behind his back. *Id.* ¶ 16. Instead of turning him directly towards his patrol vehicle or informing Plaintiff where he was taking him, Defendant Aguilar pulled Plaintiff in the opposite direction, about 270 degrees around. *Id.* ¶¶ 16-19. Without warning, Defendant Aguilar slammed Plaintiff facedown into the asphalt, fracturing his cheekbone and causing other injuries. *Id.* ¶ 21.

At some point, Defendant Travis Loomis, a certified peace officer with the Clovis Police Department, arrived on scene. *See id.* ¶¶ 4, 38. Defendant Loomis said to Defendant Aguilar, "I don't know what the fuck happened. Man, I just heard a thud!" *Id.* ¶ 40. Defendant Loomis did nothing to stop Officer Aguilar from brutally assaulting Plaintiff. *Id.* ¶ 41.

In drafting his police report on the incident and explaining his use of force, Defendant Aguilar fabricated aspects of his story, including falsely claiming Plaintiff used abusive language towards him, tried to pull away on numerous occasions, and thrust his left shoulder forward in an

aggressive manner. *See id.* ¶ 22. Despite not paying attention to exactly what happened in the matter, Defendant Loomis drafted a supplemental report that gave the impression he witnessed everything in an attempt to support Defendant Aguilar's conduct. *Id.* ¶ 38. Defendant Loomis participated in, helped, caused, or encouraged Defendant Aguilar to continue the prosecution of Plaintiff, an innocent person, by fabricating his police report and testimony to support a senior officer. *Id.* ¶ 41. At the criminal jury trial, Defendant Loomis testified he could see what had occurred from the corner of his eye enough to make his detailed police report. *Id.* ¶ 39.

## II. PROCEDURAL HISTORY

Plaintiff filed suit in state court, and subsequently filed a "First Amended Complaint for Assault, Battery, Wrongful Arrest, Prima Facie Tort, Intentional Infliction of Emotional Distress, Pain and Suffering, Negligence, Damages, Misuse of Process, Malicious Abuse of Process and Violation of 42 U.S.C. 1983" against the City of Clovis, Clovis Police Department, Officer Aguilar, and Officer Loomis in their personal and official capacities. First Am. Compl., ECF No. 1-1. In the section of the complaint entitled "Violations of 42 U.S.C. 1983," Plaintiff asserted claims under § 1983 against Defendants Aguilar and Loomis for seizing and arresting him without a warrant or probable cause in violation of the Fourth Amendment. *Id.* ¶ 57. He also alleged a claim under § 1983 against Defendants Aguilar and Loomis for "assaulting" him "under color of state law, without justification and due process of law, in violation of the Fourteenth Amendment to the United States Constitution." *Id.* ¶ 58. He asserted no other § 1983 claims in this section. *See id.* ¶¶ 56-60.

Elsewhere in the First Amended Complaint, Plaintiff asserted a variety of state law claims against Defendant Aguilar: lack of reasonable suspicion or probable cause to demand his identification, *id.* ¶ 26; lack of probable cause to arrest him for a crime, *id.* ¶ 27, assault and battery,

3

*id.* ¶ 28, "abuse of process and malicious abuse prosecution," *id.* ¶ 29, prima facie tort, *id.* ¶ 30, and intentional infliction of emotional distress, *id.* ¶ 31. He asserted that Defendant Aguilar misused the legal process by initiating a prosecution and actively prosecuting Plaintiff with no probable cause. *Id.* ¶ 23. He further asserted that Defendant Aguilar used an amount of force on a defenseless, handcuffed person likely to cause serious injury including great bodily harm. *See id.* ¶¶ 24-25.

As for state claims against Defendant Loomis, Plaintiff asserted that Defendant Loomis committed a prima facie tort, *id.* ¶ 42, and engaged in "a conspiracy amongst police officers to fabricate and support each other's version of events out of a misguided loyalty with another officer who has committed tortious conduct towards a defenseless individual," *id.* ¶ 43.

Plaintiff also stated, "Defendant's negligent training of Defendant Aguilar and/or Defendant Loomis was the proximate cause of the injuries inflicted upon Mr. Jorge Corona." *Id.* ¶ 44. Moreover, he alleged, "Defendant's pattern and practice of rewarding officers who violate the law by not taking appropriate measures to correct their inappropriate behavior is responsible and was the proximate cause of the injuries to Mr. Corona." *Id.* ¶ 45. Plaintiff further asserted that Defendant Aguilar has a history of disciplinary actions for not following policies and procedures prior to the incident with Mr. Corona, *id.* ¶ 46, and "Defendant Department's failure to properly train their officers in proper arrest procedures, when they can arrest a person for concealing ID, and when they can exercise use of force against a defenseless handcuffed subject, all were [] proximate causes of Mr. Corona's injuries," *id.* ¶ 47. Finally, Plaintiff contended that "Defendant Department and Defendant City of Clovis are responsible and liable for the intentional acts of their employees." *Id.* ¶ 48.

On August 3, 2018, Defendants filed a motion for partial summary judgment (ECF No. 41) and a motion for partial judgment on the pleadings (ECF No. 43). On September 24, 2018, Plaintiff filed a Response to Motion for Partial Judgment on the Pleadings (ECF No. 55), including as an attachment a Motion for Permission to Amend First Amended Complaint ("Motion to Amend") (ECF No. 55-1), seeking to include appropriate factual allegations as required by federal law. The Court issued a Memorandum Opinion and Order ("Order") (ECF No. 71), denying Mr. Corona's Motion to Amend without prejudice. In its Order, the Court explained that the Motion to Amend was plagued with substantive and procedural deficiencies, preventing the Court from considering the merits of Mr. Corona's argument. Mem. Op. and Order 5-8, ECF No. 71. As such, the Court granted Mr. Corona leave to file a second motion to amend, allowing him to cure the deficiencies delineated in the Court's Order and to set forth additional argument on his compliance with Federal Rules of Civil Procedure 15(b) and 16(b). *See id.* at 7.

On March 12, 2019, Mr. Corona filed a Notice of Acceptance, advising the Court that he has chosen not to file a second motion to amend. *See* Notice 1, ECF No. 72. In response, Defendants filed a Notice with the Court, stating that their motion for partial judgment on the pleadings and motion for partial summary judgment are now ready for ruling. *See* Notice 2, ECF No. 73.[2] Accordingly, this matter is now ripe for disposition and the Court will proceed to consider Defendants' motion for judgment on the pleadings as it applies to Mr. Corona's First Amended Complaint (ECF No. 1-1). *See* Mem. Op. and Order 7, ECF No. 71 ("If Plaintiff **does not** submit a revised Motion to Amend by the aforementioned date or if that Motion to Amend is denied for lack of good cause, the Court will consider Defendants' Motions as they apply to Plaintiff's First Amended Complaint.") (emphasis in original).

---

[2] The Court will consider Defendants' motion for partial summary judgment in a separate opinion.

### III. STANDARD

A motion for judgment on the pleadings provides a mechanism by which the court may dispose of a case or a claim as a matter of law. *See* Fed. R. Civ. 12(c). The standards governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) also govern a party's motion for judgment on the pleadings. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). For a party to survive a motion to dismiss, and thus a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must allege either direct or inferential allegations on all the material elements of a claim and provide enough factual allegations for a court to infer the claim is plausible. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### IV. ANALYSIS

Defendants ask the Court to grant their Motion for Judgment on the Pleadings and dismiss the following claims: (1) any 42 U.S.C. § 1983 claims against the Clovis Police Department, (2) the official capacity claims against the officers and the 42 U.S.C. § 1983 municipal liability claim against the City of Clovis, (3) negligence, (4) prima facie tort, (5) intentional infliction of emotional distress, (6) conspiracy, and (7) negligent training. *See* Def.'s Mot. 5-12, ECF No. 43. As an initial matter, Plaintiff concedes that his claims for prima facie tort, intentional infliction of emotional distress, and conspiracy are not actionable under the New Mexico Tort Claims Act, and therefore the Court will dismiss these claims. *See* Pl.'s Resp. ¶ 15, ECF No. 55.

Plaintiff also "concedes that the First Amended Complaint does not contain sufficient factual assertions regarding negligent training/supervision by Clovis Police Department in Paragraphs 44, 45, 47 and 53 of the First Amended Complaint." *Id.* ¶ 14. *See also id.* ¶ 3 ("Plaintiff concedes the allegations set forth in Paragraphs 3, 4, 5, 6, and 7 of the Motion for Partial Judgment on the Pleadings, contending that Plaintiff's First Amended Complaint, Paragraphs 44, 45, 47, does not contain references to specific factual evidence establishing the claims set forth with respect to negligent training supervision."). Although Plaintiff requested an opportunity to add factual allegations required by federal law, *see id.* ¶ 5, he ultimately filed a Notice of Acceptance, advising the Court that he had chosen not to file a second motion to amend. *See* Notice 1, ECF No. 72. Plaintiff additionally clarified in his response that he had not alleged a negligence claim against Defendants Aguilar and Loomis and that his allegations of negligence were found in Paragraphs 44, 45, 47, and 53 against the Clovis Police Department. *See* Pl.'s Resp. ¶ 13, ECF No. 55. Given the law and the admissions above, the Court will dismiss Plaintiff's claim for negligence/negligent training and supervision against the Clovis Police Department, the City of Clovis, and the officers. Accordingly, all that remains to be addressed in Defendants' motion for partial judgment on the pleadings are the 42 U.S.C. § 1983 claims.

**Section 1983 Claims**

Defendants assert that Plaintiff's 42 U.S.C. § 1983 claims against the City of Clovis and the Clovis Police Department are subject to dismissal for the following reasons. First, Defendants contend the Clovis Police Department is not a "person" within the meaning of § 1983 and it is therefore not a separate suable entity. Def.'s Mot. 5-6, ECF No. 43. Second, Defendants argue Plaintiff has failed to illustrate a "custom, practice, or policy" of the City of Clovis that was a moving force behind the alleged constitutional deprivations. *See id.* at 7-8. Finally, Defendants

argue that Plaintiff's claims against the officers in their official capacities are really claims against the City of Clovis, and thus, are subject to dismissal. *See id.* at 6-8.

### Clovis Police Department

Police departments are not suable entities under § 1983, because they lack legal identities apart from the municipality. *Ketchum v. Albuquerque Police Dept.*, 958 F.2d 381, *2 (10th Cir. 1992) (unpublished decision) ("Defendants correctly state that police departments such as RPD, TPD, and APD are not suable entities under § 1983, because they lack legal identities apart from the municipality.") (citing *Martinez v. Winner*, 771 F.2d 424, 443 (10th Cir. 1985)). Plaintiff's § 1983 claims against the Clovis Police Department thus must be dismissed.

### City of Clovis

As for the § 1983 claims against Defendant City of Clovis, in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court ruled that municipalities cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory for merely employing a tortfeasor. Municipalities, instead, are subject to Section 1983 liability only when their official policies or customs cause a plaintiff's injuries. *Id.* at 694; *Johnson v. Johnson*, 466 F.3d 1213, 1215 (10th Cir. 2006). Specifically, this causation requirement permits recovery against a municipality when an employee acts pursuant to the government's "policy or custom" and that action results in an unconstitutional deprivation. *See Monell*, 436 U.S. at 691. As such, liability only attaches if there is a "direct causal link" between the municipality's policy or custom and the employee's alleged unconstitutional conduct. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

This standard cannot be satisfied by merely demonstrating that one of the municipality's employees "happened to apply the policy in an unconstitutional manner." *Id.* at 387. Rather,

municipal liability "is limited to action for which the municipality is actually responsible," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986), and a plaintiff cannot impute liability to the municipality based solely on the fact that it hired the offending official, *City of OK City v. Tuttle*, 471 U.S. 808, 810 (1985).

Plaintiff argues in his response that his § 1983 *Monell* claims are supported by his allegations in Paragraphs 44, 45, 47, 56, and 59 of the First Amended Complaint. *See* Pl.'s Resp. ¶ 6, ECF No. 55. Turning to those cited portions of his complaint, Paragraph 56 incorporates the entirety of the preceding complaint and Paragraph 59 generally asks that Defendants be held accountable for their actions. They alone thus do not provide specific factual support to the *Monell* liability analysis.

Paragraph 44 alleges that Defendant's "negligent training" proximately caused Plaintiff's injuries. Paragraph 47 states that Defendant's failure to properly train their officers in proper arrest procedures, when they can arrest a person for concealing identity, and when they can use force against a handcuffed subject proximately caused Plaintiff's injuries. The remaining cited paragraph, Paragraph 45, alleges that "Defendant's pattern and practice of rewarding officers who violate the law by not taking appropriate measures to correct their inappropriate behavior is responsible and was the proximate cause of the injuries to Mr. Corona." First Am. Compl. ¶ 45, ECF No. 1-1. Plaintiff further asserts that Defendant Aguilar has a history of disciplinary actions for not following policies and procedures prior to the incident with Plaintiff. *Id.* ¶ 46. These allegations, however, are insufficient to state a municipal liability claim.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. The failure to train must reflect a deliberate or

conscious choice by a municipality for liability to attach. *See id.* at 389. Where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," the failure to properly train represents a policy for which the city may be liable if it caused an injury. *Id.* at 390. To establish municipal liability under a failure-to-train theory, a plaintiff must prove that (1) an officer violated a constitutional right of the plaintiff's; (2) the violation arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrated a deliberate indifference by the city toward persons with whom the officer comes into contact; and (4) there is a direct causal link between the inadequate training and the unconstitutional conduct. *See Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003). As for the third element,

> [t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.
>
> Even where the City's policy is not unconstitutional, a single incident of excessive force can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy.

*Id.* at 1229 (internal quotations omitted).

Negligent training alone does not establish § 1983 liability. Plaintiff did not expressly allege that the City of Clovis acted with deliberate indifference. Nor did Plaintiff allege enough facts to support a reasonable inference that the City of Clovis acted with deliberately indifference. Plaintiff did not assert facts to determine what inappropriate behavior the City of Clovis failed to

address in the past or what policies and procedures Defendant Aguilar violated in the past to make the requisite direct causal connection to the alleged constitutional violations here. For example, there are no allegations that Defendant Aguilar had a history of disciplinary actions for arresting persons without probable cause or for using excessive force that the City of Clovis failed to discipline properly. Because the allegations of the First Amended Complaint fail to state a municipal liability claim, the Court will dismiss Plaintiff's § 1983 claims against the City of Clovis.

### Officers Aguilar and Loomis in their Official Capacities

Turning to the final matter regarding *Monell* liability, Defendants move to dismiss the official capacity claims asserted against Officers Aguilar and Loomis. Plaintiff in his response stated: "The official capacity claims against Defendant Aguilar and Defendant Loomis are not intended to establish a separate cause of action against the police officer Defendants, but rather is an assertion that they were taking action under color of state law and within the scope of their official duties." Pl.'s Resp. ¶ 10, ECF No. 55. To the extent they were asserted, the Court will dismiss the official capacity claims against Defendants Aguilar and Loomis because they constitute claims against the municipality, which as discussed above, should be dismissed for failure to state a claim. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("[A]n official-capacity suit against a [government official] 'is not a suit against the official but rather is a suit against the official's office."); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming dismissal of allegations against municipal officers and employees "in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves").

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion for Partial Judgment on the Pleadings (**ECF No. 43**) is **GRANTED**.

2. Plaintiff's claims for prima facie tort, intentional infliction of emotional distress, conspiracy, negligence/negligent training or supervision are **DISMISSED**.

3. Plaintiff's § 1983 municipal liability claims against Defendants Clovis Police Department, City of Clovis, and Aguilar and Loomis in their official capacities are **DISMISSED**.

_____
Judith C. Herrera
United States District Court Judge