# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JORGE RAY CORONA,

     Plaintiff,

v.                              No. 2:17-cv-805 JCH/CG

CITY OF CLOVIS, CLOVIS POLICE
DEPARTMENT, OFFICER BRENT AGUILAR,
and OFFICER TRAVIS LOOMIS, in their official
capacities,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' First Motion for Partial Summary Judgment and Memorandum in Support Thereof* ("Motion for Summary Judgment") (ECF No. 41). After considering the parties' filings, the record, and the relevant law, the Court concludes that the motion for summary judgment should be granted as to Defendants' requests to dismiss Plaintiff's claim for violation of due process under the Fourteenth Amendment against Defendants Aguilar and Loomis and Plaintiff's § 1983 unlawful arrest claim against Defendant Loomis. In all other respects, the Court will deny the motion.

## I.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could have an effect on the outcome of the lawsuit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation omitted). A dispute over a material fact is "genuine" if the evidence presented could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation omitted). In considering a summary judgment motion, the court views

the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his or her favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the movant does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the party seeking summary judgment satisfies its burden, the burden then shifts to the non-movant to go beyond the pleadings and set forth specific facts supported by reference to affidavits, deposition transcripts, or other admissible evidence. *See id.*

The incident in this case was captured, at least in part, on the police dashcam video, submitted as "Plaintiff's Exhibit 4," and from Officer Aguilar's lapel camera entitled "Plaintiff's Exhibit 3." In a case, such as this one, where there is a video recording capturing the events in question, a court should view the facts in the light depicted by the video recording. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Consequently, the facts set forth in the next section are drawn from the undisputed evidence; the video recording; and, for the facts not conclusively established in the video recording, those facts that are supported by admissible evidence and construed in the light most favorable to Plaintiff, the non-moving party.

## II.    Factual Background

Around 2:15 a.m. on August 3, 2014, Officer Brent Aguilar with the Clovis Police Department conducted a traffic stop after observing a vehicle speeding through a red light in Clovis, New Mexico. *See* Defs.' Mot. for Summ. J., Undisputed Facts ¶¶ 1-2, ECF No. 1.

Immediately upon approaching the stopped vehicle, Officer Aguilar instructed the driver, Teshia Lujan, to roll down the back-passenger window while he shined his flashlight into the rear driver side window. *See id.*, Undisputed Fact ¶ 5; Pl.'s Ex. 3 at 00:17-:21. Plaintiff Jorge Corona, a passenger in the back seat of the vehicle, asked Officer Aguilar why he stopped the vehicle. Defs.' Mot. for Summ. J., Undisputed Fact ¶ 5; Pl.'s Ex. 3 at 00:17. In response, Officer Aguilar said he was not talking to him. Pl.'s Ex. 3 at 00:23-:24. While continuing to shine his flashlight into the rear driver side window, Officer Aguilar asked the driver for her license, registration, and insurance. *Id.* 00:25-:27. A few moments later, Ms. Lujan handed some papers out the window and Officer Aguilar took the paperwork from her and asked if she had her license with her. *Id.* at 00:46-:51.

While Ms. Lujan searched for her license, Mr. Corona asked Officer Aguilar why he stopped them. Defs.' Mot. for Summ. J., Undisputed Fact ¶ 5; Pl.'s Ex. 3 at 01:09-:11. Officer Aguilar did not suspect Mr. Corona of committing a crime at that point. Tr. 47:4-11, ECF No. 54 at 39. In response to Mr. Corona's question, Officer Aguilar stated, "You're not driving, buddy. You got ID?" *Id.* at 1:12-:13. Mr. Corona responded, "Nah. Why you stopping us?" *Id.* at 01:13-15. Officer Aguilar replied while shining his flashlight in the back window, "Let me have your ID." *Id.* at 01:16. Again, Mr. Corona asked why he stopped them, and Officer Aguilar once again replied, "Let me have your ID." *Id.* at 01:17-18. Mr. Corona immediately asked again, "Why you stopping us?" *Id.* at 01:19-20. Officer Aguilar responded, "I'm gonna ask you one more time and then I'm going to place you under arrest" and asked for his ID. *Id.* at 01:20-22. Mr. Corona asked, "for what?" *Id.* at 01:23. Officer Aguilar then ordered Mr. Corona to step out of the car. *Id.* at 01:24. During this approximately 15-second interaction, Ms. Lujan continued to search for her license. *See id.* at 01:09-:22.

Mr. Corona got out of the car while asking again why he was stopping them. *Id.* at 01:25-:35. Officer Aguilar instructed him to turn around and face the car with instructions to place his hands behind his back. *Id.* at 01:35-:39. As Mr. Corona was being handcuffed and placed against the car, he once more asked Officer Aguilar, "why are you stopping us?" *Id.* at 1:36-38. Mr. Corona repeated his question and asked if he has a reason to pull them over, to which Officer Aguilar replied, "Yes, I do." *Id.* at 1:38-1:48. When he asked, "for what?" Officer Aguilar told him not to worry about it. *Id.* 1:48-:52.

Around the same time, Officer Travis Loomis with the Clovis Police Department arrived on scene and approached the driver's-side window of the vehicle. *See id.* at 1:58-:59; Defs.' Mot. for Summ. J., Undisputed Fact ¶ 10. Upon seeing Officer Loomis, Officer Aguilar informed him that Mr. Corona had been placed under arrest for concealing ID. Pl.'s Ex. 3, 1:58-:59. In response, Mr. Corona said, "Concealing ID, for what?" and repeatedly said, "I didn't conceal ID." *Id.* at 2:00-07.  Mr. Corona noted, "You didn't even ask me what my name was." *Id.* at 2:07-:08.

As Officer Aguilar led Mr. Corona to the patrol car while Mr. Corona repeated that he didn't conceal ID, Officer Aguilar told him three times in a normal tone of voice, "Come on. Come on. Stop. Stop. Stop. Come on. I asked you for your ID." *Id.* at 2:00-2:12. Officer Aguilar then slammed Mr. Corona down to the ground on the asphalt. *See* Pl.'s Ex. 4 at 3:57-4:00. Officer Aguilar commanded loudly, "Stop. Stop." *See* Pl.'s Ex. 3 at 2:12-:16; Pl.'s Ex. 4 at 4:00-:01. A few moments later, Officer Aguilar informed him, "Now you are under arrest for resisting and evading too." Pl.'s Ex. 3 at 2:22-:25.

Following Mr. Corona's arrest, Officer Aguilar charged him with resisting, evading, or obstructing an officer, in violation of N.M.S.A. § 30-22-1, and concealing identity, in violation of N.M.S.A. § 30-22-3. *See* Criminal Compl., ECF No. 54 at 28-29. A Curry County Magistrate Judge found probable cause existed in the complaint. *Id.* at 29. The district attorney's office

dismissed the concealing identity charge. *See* Notice of Dismissal, ECF No. 54 at 42. After a trial, the jury acquitted Mr. Corona of the only charge before it of resisting, evading, or obstructing an officer. *See* Verdict, ECF No. 54 at 41. Mr. Corona then brought a civil lawsuit in the Ninth Judicial District of New Mexico, subsequently removed to this Court, alleging "assault, battery, wrongful arrest, prima facie tort, intentional infliction of emotional distress, pain and suffering, negligence, damages, misuse of process and malicious abuse of process and violation of 42 U.S.C. 1983" against the City of Clovis, the Clovis Police Department, and Officers Brent Aguilar and Travis Loomis. First Am. Compl., ECF No. 1-1 at 1. In a Memorandum Opinion and Order entered contemporaneously with this opinion, the Court dismissed Plaintiff's claims for prima facie tort, intentional infliction of emotional distress, conspiracy, negligence/negligent training, and municipal liability under § 1983.

Consequently, the claims that remain are as follows. Mr. Corona contends that Officer Aguilar's conduct exposed him to liability under the New Mexico Tort Claims Act ("NMTCA") for assault, battery, malicious abuse of process, and false arrest. First Am. Compl. 5, ECF No. 1-1. Further, Plaintiff asserts under the NMTCA a cause of action for malicious abuse of process against Officer Loomis. *See id.* Mr. Corona has also articulated a claim for violating the NMTCA against the Clovis Police Department and the City of Clovis, seeking to impute liability for Officers Aguilar and Loomis' conduct under the doctrine of *respondeat superior*. *See* Pl.'s Resp. to Mot. for Partial J. on the Pleadings 3, ECF No. 55 (citing Paragraph 48 of the First Amended Complaint and *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Departm*ent, 1996-NMSC-021, ¶ 14, 121 N.M. 646). Finally, Plaintiff asserts § 1983 claims against Officers Aguilar and Loomis for unlawful arrest under the Fourth Amendment and unlawful assault without justification and due process in violation of the Fourteenth Amendment. *See* First Am. Compl. 8, ECF No. 1-1.

Defendants have moved for partial summary judgment and ask the Court to dismiss the following claims: the § 1983 claims alleging violations of Mr. Corona's Fourth and Fourteenth Amendment rights against Officers Aguilar and Loomis, *see* Def.'s Mot. for Summ. J. 5-19, ECF No. 41, and the malicious abuse of process claims against each Defendant, *id.* at 19-20.[1]

### III. Analysis

### A. 42 U.S.C. § 1983 Claims Against Officers Aguilar and Loomis

#### 1. "[A]ssault[] … without justification" in violation of the Fourteenth Amendment

Defendants challenge Mr. Corona's claim that Officers Aguilar and Loomis violated § 1983 by assaulting Mr. Corona "under color of state law, without justification and due process of law, in violation of the Fourteenth Amendment to the United States Constitution." First Am. Compl. ¶ 58, ECF No. 1-1. Defendants argue that an assault does not amount to a substantive due process claim and that the Fourth Amendment, not the Fourteenth Amendment, provides the constitutional foundations for false arrest and excessive force claims. *See* Def.'s Mot. 18-19, ECF No. 41. Defendants thus ask for summary judgment on the Fourteenth Amendment assault claim.

Plaintiff argues that the basis for his allegations arise from the assault that took place before and while he was in custody and is a violation of substantive due process. Pl.'s Resp. 12, ECF No. 54. In support, Mr. Corona cites *Bell v. Wolfish*, a United States Supreme Court decision discussing the contours of a pretrial detainee's right to assert a constitutional violation based on the conditions of his confinement while detained pending trial. 441 U.S. 520 (1979). In particular, Mr. Corona cites to a section in *Bell* which analyzes whether a detainee's conditions of confinement amount to "punishment," thus triggering a detainee's constitutional right to be free from punitive measures prior to an adjudication of guilt. *Bell*, 441 U.S. at 535-37.

---

[1] Defendants did not move to dispose of Mr. Corona's claims for assault, battery, wrongful arrest, or imputed liability under the New Mexico Tort Claims Act. Those claims therefore remain in the case.

The Supreme Court, however, has rejected the argument that an excessive force claim arising during an arrest may be brought under the Due Process Clause. In *Graham v. Connor*, the Supreme Court held, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. 386, 395 (1989) (emphasis in original). The *Graham* court expressly noted that § 1983 claims alleging the excessive use of force during an arrest proceeding are not governed by the Fourteenth Amendment's substantive due process standard. *Id.* The Supreme Court explained, citing *Bell v. Wolfish*, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment, but it made clear that the Fourth Amendment applies during an arrest. *Id.* at n.10.

Although Plaintiff relied on the incorrect constitutional provision in Paragraph 58, his factual allegations and legal assertions reasonably advised Defendants that he was alleging an excessive force claim in violation of the Constitution. Although he used the phrase "assaulting … without justification," instead of excessive force, Paragraph 56 of the Section 1983 portion of his complaint incorporated the prior paragraphs. First Am. Compl. ¶ 56, ECF No. 1-1. Earlier in the complaint, Plaintiff alleged he was slammed facedown into the asphalt without warning while he was handcuffed with his arms behind his back and totally defenseless, *id.* ¶ 21, even though Plaintiff had not attempted to pull away from Officer Aguilar or thrust his shoulder aggressively, *see id.* ¶ 22. He asserted that Officer Aguilar's use of force fractured his cheekbone and caused other injuries, *see id.* ¶ 21, and the amount of force used was likely to cause serious and painful injuries including great bodily harm, *id.* ¶ 24.

To state an excessive force claim under the Fourth Amendment, the plaintiff must show that (1) a "seizure" occurred and (2) the seizure was "unreasonable." *Bella v. Chamberlain*, 24

F.3d 1251, 1255 (10th Cir. 1994) (quoting *Brower v. County of Inyo*, 489 U.S. 593 (1989)). Despite not using the express term "excessive force," the facts and all reasonable inferences derived therefrom gave Defendants notice that Plaintiff was asserting an unreasonable seizure based on an excessive force theory as well as an unlawful arrest theory. The Court will therefore construe Plaintiff's § 1983 assault without justification claim as an excessive force claim under the Fourth Amendment. Defendants' summary judgment motion does not address the merits of Plaintiff's constitutional excessive force claim against Officer Aguilar, so the Court will not discuss the merits herein and the Fourth Amendment excessive force claim will remain in the case. The Court, however, will dismiss the incorrectly pled Fourteenth Amendment claim.

As for Defendant Loomis, Plaintiff in his response argued that he "sustained injuries from being thrown to the ground, face down on the asphalt while handcuffed behind the back, by the excessive force *used by Defendant Aguilar*." Pl.'s Resp. 13, ECF No. 54 (emphasis added). Although Plaintiff alleges in his complaint that Officer Loomis did nothing to stop Officer Aguilar from brutally assaulting him, *see* First Am. Compl. ¶ 41, Plaintiff in his response does not differentiate arguments regarding a constitutional excessive force claim against Defendant Loomis. Based on the briefs, it is unclear to the Court whether Plaintiff is pursuing a separate excessive force claim against Defendant Loomis.

To clarify the remaining issues for trial, within ten days of entry of this Memorandum Opinion and Order, Plaintiff must file a notice with the Court setting forth whether he is pursuing a separate § 1983 excessive force claim against Defendant Loomis. Furthermore, given the Court's ruling concluding that Plaintiff's assault without justification claim is an excessive force claim under the Fourth Amendment, the Court will provide the parties an opportunity to submit any dispositive motions they may wish to file on the merits of the Fourth Amendment excessive force claim(s). Should the parties wish to submit a dispositive motion, any such motion must be filed

within 21 days of the filing of Plaintiff's Notice regarding whether he is asserting an excessive force claim against Officer Loomis.

### 2. Unlawful seizure in violation of Fourth Amendment

Next, Defendants argue that Mr. Corona cannot state a claim against Officers Aguilar and Loomis for unlawful arrest for two reasons. First, Defendants posit that the factual record shows Mr. Corona's arrest was not unlawful. *See* Def.'s Mot. 5-17, ECF No. 41. Second, Defendants contend that Officers Aguilar and Loomis are entitled to qualified immunity. *Id.* at 20-25.

Under § 1983, state officials sued in their personal capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Once a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating both that (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *Id.* The Tenth Circuit Court of Appeals has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1134-35 (internal citations omitted).

A decision to afford an officer qualified immunity is almost always a question of law, to be decided by a court prior to trial. *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217 (10th Cir. 2008). The protection afforded by qualified immunity applies to government officials whether their mistake is one of law or fact – or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to address the requirements of a qualified immunity defense in any order. *Id.* at 236.

### a. Violation of Fourth Amendment

The warrantless arrest of a person in a public place based on probable cause does not violate the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 42 (1976) (citing *United States v. Watson*, 423 U.S. 411 (1976)). Probable cause to support a warrantless arrest exists when the facts

and circumstances within the officer's knowledge are sufficient to warrant a reasonable person to believe that the suspect had committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[I]n determining whether probable cause exists, the courts must apply the 'totality of circumstances' test." *Brierley v. Schoenfeld*, 781 F.2d 838, 841 n.1 (10th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)).

Mr. Corona was arrested for "resisting, evading, or obstructing an officer," in violation of N.M.S.A. § 30-22-1, and "concealing identity," in violation of N.M.S.A. § 30-22-3. "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer . . . in a legal performance of his duty …." N.M. Stat. Ann. § 30-22-3. "Section 30–22–3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 1999-NMCA-072, ¶ 12, 127 N.M. 472 (quoting *In re Suazo*, 117 N.M. 785, 793 (1994)).

Furthermore, unlike other criminal statutes, Fourth Amendment jurisprudence does not allow an officer to arrest an individual solely for concealing identity; instead, the officer must have "reasonable suspicion" that the individual was involved in "some predicate, underlying crime." *Keylon*, 535 F.3d at 1216. When the Supreme Court considered a similar concealing identity statute, it held that detaining an individual and requiring him to identify himself violated the Fourth Amendment because the officers lacked reasonable suspicion to believe the individual was or had engaged in criminal conduct. *Brown v. Texas*, 443 U.S. 47, 53 (1979). Accordingly, to answer the question of the legality of Mr. Corona's arrest, the Court must address two issues: (1) did Officer Aguilar have reasonable suspicion that Mr. Corona had committed or was committing the crime of resisting, evading, or obstructing an officer, and (2) did Officer Aguilar have probable cause to

arrest Mr. Corona for concealing identity when he failed to produce identification, as commanded? *See Keylon*, 535 F.3d at 1216-17; *Romero v. City of Clovis*, 1:17-cv-00818-PJK-GBW, 2019 WL 2327660, at *3 (D.N.M. May 31, 2019).

### 1) Reasonable suspicion of § 30-22-1 violation

"For reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct;' he or she simply must possess 'some minimal level of objective justification' for making the stop." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)). "Evidence falling 'considerably short' of a preponderance satisfies this standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). A court considers the totality of the circumstances and the information available to the officer when determining whether reasonable suspicion existed. *See id.*

Defendants argue that Officer Aguilar had reasonable suspicion that Mr. Corona's conduct constituted "resisting, evading, or obstructing an officer," in violation of N.M.S.A. § 30-22-1(D). Def.'s Mot. 14-15, ECF No. 41. The question then is whether under the circumstances presented, a police officer in Officer Aguilar's position would have some minimal level of objective justification for believing that Mr. Corona's conduct amounted to "resisting, evading, or obstructing an officer" in violation of § 30-22-1. To serve as the predicate offense, this inquiry must necessarily focus on Mr. Corona's conduct before he was placed under arrest for concealing identity.

The crime of "resisting, evading, or obstructing an officer" occurs when an individual "resist[s] or abus[es] any … peace officer in the lawful discharge of his duties." N.M. Stat. Ann. § 30-22-1(D). "Under New Mexico law, '[r]esisting, evading, or obstructing an officer primarily consists of physical acts of resistance.'" *Keylon*, 535 F.3d at 1216 (quoting *State v. Wade*, 100

N.M. 152, 667 P.2d 459, 460 (Ct. App. 1983)). Defendants do not contend that Mr. Corona "physically resisted" Officer Aguilar prior to his arrest.[2]

New Mexico courts have also concluded that § 30-22-1 prohibits abusive speech. *Keylon*, 535 F.3d at 1216-17. "Abusive speech," in the context of § 30-22-1, is defined under New Mexico law as "fighting words," which are words that "tend to incite an immediate breach of the peace." *Id.* at 1217 (citing *Wade*, 667 P.2d at 461). To be "abusive," the speech must be more than "merely evasive." *Id.* at 1216-17.

Mr. Corona's comments do not constitute "abusive speech" under § 30-22-1(D). He uttered neither a personally abusive epithet nor were his words likely to provoke a violent reaction. *Cf. Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 873 (10th Cir. 1993) (holding that message on signs did not amount to fighting words because they "were not personally abusive epithets so directed that they were inherently likely to provoke a violent reaction") (internal quotations omitted). While Defendants paint Mr. Corona's conduct as rude and insolent, *see* Def.'s Reply 10, ECF No. 61, the record construed in Mr. Corona's favor shows that he never raised his voice, never spoke when the officer or the driver were speaking, and the only questions he asked were in essence (1) why are we being pulled over and (2) why am I being placed under arrest. *See Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16 (1973) ("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.").

Additionally, "resisting" may include a defendant's refusal to obey lawful police orders. *See Youbyoung Park v. Gaitan*, 680 F. App'x 724, 733 (10th Cir. Mar. 1, 2017) (citing *State v. Diaz*, 121 N.M. 28, 908 P.2d 258, 259-62 (Ct. App. 1995)). *See also City of Roswell v Marin*, No.

---

[2] Mr. Corona's comments and actions after he was placed in handcuffs and arrested are not relevant to the Court's analysis on the issue of whether Officer Aguilar had a reasonable suspicion to believe Mr. Corona had resisted, evaded, or obstructed him prior to his arrest for concealing identity.

34,286, 2015 WL 6034246, ¶¶ 3-5 (N.M. App. Sept. 2, 2015) (unpublished decision) (holding that defendant's refusal to obey officers prior to her arrest was sufficient to support probable cause for her arrest under city ordinance for obstructing an officer). Defendants argue that Mr. Corona continuously interrupted and interfered with Officer Aguilar's investigation of Ms. Lujan's traffic violation, so that he was justified in arresting Mr. Corona when he failed to comply with the lawful order to produce identification. *See* Defs.' Mot. 16, ECF No. 41. Viewing the facts and inferences in the light most favorable to Plaintiff, a jury could find that Mr. Corona's conduct does not satisfy the definition of verbal resistance under New Mexico law. The evidence in Plaintiff's favor shows that, during the time he was asking questions about why Officer Aguilar stopped them, Ms. Lujan was still searching for her identification and Mr. Corona's questions were not interrupting Officer Aguilar or preventing Ms. Lujan from answering any questions posed to her. *Compare State v. Wade*, 1983-NMCA-084, ¶¶ 3, 17, 100 N.M. 152 (holding that screaming obscenities, waving arms, and yelling at officers to "get the hell out of the house" did not support a conviction under § 30-22-1, where officer could hear what defendant's wife said to him during his investigation, words did not amount to fighting words, and he did not threaten officers), *with Marin*, 2015 WL 603426, ¶¶ 3-5 (concluding defendant violated city ordinance of obstructing officer where defendant was ordered to stop her verbal obstruction of officer's questioning of husband but she did not, because officer was having trouble hearing husband). A jury could find that Mr. Corona's actions did not prevent Officer Aguilar from discharging his duties and did not interfere with Officer Aguilar's investigation.

With respect to the failure to comply with a lawful order, the order Defendants identify is the order to produce identification. As aforementioned, Supreme Court jurisprudence requires that there be reasonable suspicion of a separate predicate crime before an officer may arrest a suspect for concealing identity. Defendants cannot stand on the predicate crime of refusing to obey a lawful

order where the order is demanding identity. To hold otherwise would turn Supreme Court precedence on its head. *See Romero v. Schum*, 413 F. App'x 61, at *2 (10th Cir. Feb. 15, 2011) (unpublished) ("The Supreme Court held in 1979 that police officers lacking 'reasonable suspicion to believe [a person] was engaged or had engaged in criminal conduct' may not demand identification and arrest the person for failing to provide it.") (quoting *Brown*, 443 U.S. at 53). Moreover, Mr. Corona could not comply because he did not have a license in the car, which Mr. Corona told him. He did not refuse to give his name, as Officer Aguilar did not specifically ask for it. Construing all facts and inferences in Plaintiff's favor, the record in this case simply does not support reasonable suspicion that Mr. Corona was involved in criminal activity, to wit, resisting, evading, or obstructing an officer. Without a reasonable suspicion of a predicate crime, Officer Aguilar could not arrest him for concealing identity. *See Hiibel v. Sixth Judicial Dist. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 184 (2004).

### 2) Probable cause to arrest under § 30-22-3

Additionally, for Officer Aguilar's arrest to be lawful, he had to have probable cause to believe Mr. Corona concealed his identity. Turning to the undisputed video evidence of this case, following the stop of the vehicle and after about one minute of the driver searching for her documentation, Mr. Corona asked Officer Aguilar "why you stopping us?" Pl.'s Ex. 3 at 01:11. Officer Aguilar inquired whether Mr. Corona had "ID." *Id.* at 01:13. Mr. Corona replied that he did not. *See id.* at 01:13-:15. Mr. Corona and Officer Aguilar then repeated back-and-forth: "Why you stopping us?" and "Let me have your ID?" *See id.* at 01:13-:20. Finally, Officer Aguilar stated, "I'm going to ask you one more time and then I'm going to place you under arrest" and asked for his ID. *Id.* at 01:20-:22. Mr. Corona responded, "for what?" *Id.* at 01:23. Officer Aguilar then demanded Mr. Corona step out of the car and informed him that he was being placed under arrest for concealing identification. *Id.* at 01:24-:43.

Construing the facts and inferences in Plaintiff's favor, a reasonable jury could find that Plaintiff did not conceal his true name or identity, because Officer Aguilar only asked for his license – which he did not have and said so – and never asked for his name or other identifying information. A jury could also find that the requests for identification were made in such rapid succession before the arrest that Mr. Corona did not delay in identifying himself in a manner that caused substantial inconvenience to Officer Aguilar's investigation. From the moment Officer Aguilar first asked Mr. Corona for his ID, to the moment he ordered him out of the car, roughly ten-fifteen seconds elapsed. *See id.* at 01:13-:24. Mr. Corona was arrested for concealing identity before even the driver had enough time to produce her license, despite being asked to do so by Officer Aguilar more than a minute earlier. After Officer Aguilar told Mr. Corona, "I'm going to place you under arrest, let me have your ID," approximately two seconds elapsed before he ordered Mr. Corona out of the vehicle. *See id.* at 01:22-:24. Finally, a jury could also conclude based on the evidence in Plaintiff's favor that a reasonable officer could not find that Mr. Corona intended to obstruct the execution of the law or to hinder or interrupt Officer Aguilar's investigation. At the time Mr. Corona asked his questions and failed to produce identification, Officer Aguilar was still waiting for Ms. Lujan to produce her driver's license. Construing the record in Plaintiff's favor, a jury could find that Officer Aguilar did not have probable cause to arrest Mr. Corona for concealing identity when he did not comply with the demands for "ID."

### b.  Clearly established right

Having determined that Plaintiff met his burden on the first prong of the qualified immunity analysis, the Court must next determine whether that right was clearly established. In defining the right that must be clearly established, the Tenth Circuit Court of Appeals has cautioned that the Court's inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) (internal quotations

omitted). This particularity is especially important in the context of the Fourth Amendment, because it may sometimes be "difficult for an officer to determine how the relevant legal doctrine… will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Specificity ensures that a police officer have "fair warning" that he lacked probable cause to proceed with arrest, thus permitting police officers to make "reasonable mistakes" in rendering what can often be split-second decisions. *See A.M.*, 830 F.3d at 1139-40. As such, a police officer may be incorrect about whether he possesses probable cause, as long as his mistake is reasonable. *Id.* at 1140.

In the qualified immunity context, a defendant is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). In other words, a court must ascertain if there was arguable probable cause for the arrest. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). The probable cause standard is "an objective standard, and thus '[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive.'" *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).

Ordinarily, to be clearly established, the plaintiff must identify a Supreme Court or Tenth Circuit case holding that an officer violated the law under similar circumstances. *See Grissom v. Roberts*, 902 F.3d 1162, 1167-68 (10th Cir. 2018). Indeed, it must be "beyond debate" based on existing case law that the arrest lacked legal justification. *Kerns v. Bader*, 663 F.3d 1173, 1183 (10th Cir. 2011).

Here, the constitutional right that Officer Aguilar violated was clearly established at the time this incident occurred. The principal case upon which Plaintiff relies is *Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008). Like here, initially the plaintiff in *Keylon* was not a

suspect of a criminal investigation but was present on the scene as a witness. *Id.* at 1213. An officer was investigating damage to a tow-truck and the tow-truck driver directed the officer's attention to the plaintiff, the suspect's mother, who was walking out of her home. *See id.* at 1213. When the police officer approached the plaintiff and asked her for the birthday and address of her son – who was the subject of the criminal investigation – she responded that she did not know. *Id.* The police officer then asked the plaintiff for her identification. *Id.* Instead of providing her ID, the plaintiff began to walk towards her vehicle, and the officer prevented her from opening the car door by putting up his hand. *Id.* The officer then asked the plaintiff where her identification was, and she responded that it was inside her home. *Id.* As the plaintiff began walking towards her home, the police officer again stated, "Ma'am, I need to see your ID." *Id.* In response, the plaintiff stated, "Well, I'll get my ID when I'm ready." *Id.* The plaintiff was then placed under arrest for concealing identity in violation of N.M. Stat. Ann. § 30-22-3. *Id.*

The Tenth Circuit explained the established law that, to arrest a person for concealing identity, there must be reasonable suspicion of another predicate, underlying crime. *See id.* at 1216. The police officer claimed that the plaintiff violated § 30-22-1(D), "resisting, evading or obstructing an officer." *Id.* The Tenth Circuit in *Keylon* addressed the exact same interplay between § 30-22-3 and § 30-22-1(D) as that at issue here and examined the application of § 30-22-1(D) to similar conduct as here – conduct that did not include physical resistance and was merely evasive, not abusive, speech. *Id.* at 1216-17. The court concluded that because she did not physically resist the investigation prior to her arrest and did not engage in speech likely to incite a breach of the peace, the officer did not have probable cause to believe she had violated § 30-22-1 and could not arrest her for concealing identity. *Id.* at 1217. In deciding that the officer was not entitled to qualified immunity, the Tenth Circuit stated, "New Mexico law is clear–no reasonable person in

[the police officer's] position could have thought he had probable cause to arrest [the plaintiff]." *Id.* at 1220.

Defendants seek to distinguish this case from *Keylon* by framing the facts as Mr. Corona "rudely and insolently attempt[ing] to interfere" with Officer Aguilar's investigation. Def.'s Reply 10, ECF No. 61. However, based on the evidence, a jury could find that Mr. Corona did not attempt to interfere with the investigation, did not speak while Officer Aguilar or the driver were speaking, did not use a combative tone, did not use abusive speech, and did not physically resist in any way. Considering those facts and inferences, a reasonable officer would know that under the circumstances confronted by Officer Aguilar the holding in *Keylon* clearly controlled – no reasonable person in Officer Aguilar's position could have thought he had probable cause to arrest Mr. Corona where Mr. Corona did not physically resist, use fighting words, or disobey a lawful order.

In arguing that *Keylon* does not demonstrate clearly established law for purposes of qualified immunity, Defendants rely on *Quinn v. Young*, 780 F.3d 998 (10th Cir. 2015). Defs.' Reply 10, ECF No. 61. In *Quinn*, the Tenth Circuit stated that "by relying upon *Keylon* in such a general sense, the district court committed error." *Id.* at 1011. However, the issue in *Quinn* involved whether there was probable cause to arrest the persons who picked up a backpack police left near an ATM during a "backpack sting operation" and had virtually nothing to do with the law that was recited in *Keylon*. *Id.* at 1002-03, 1012-13. This case is both factually and legally distinct from *Quinn*. The district court's opinion in *Quinn* was reversed in large part because its reliance on *Keylon* was a general textbook statement of Fourth Amendment law and was not connected to the specific facts of that case. *Id.* at 1005. In contrast, the Court's use of *Keylon* is not to assert a broad or sweeping statement of law, but for comparison of its highly similar facts and relevant

legal analysis. *Compare id.* at 1010 (citing *Keylon* as demonstrating clearly established law that the Fourth Amendment requires probable cause in an arrest proceeding).

Defendants also filed a Notice of Supplemental Authority (ECF No. 74), arguing that the case of *Romero v. City of Clovis*, No. 1:17-cv-00818-PJK-GBW, 2019 WL 2327660 (D.N.M. May 31, 2019), supports the conclusion that Defendant Aguilar had arguable probable cause to arrest Mr. Corona. The Court disagrees and finds the *Romero* case distinguishable. Significantly, *Romero* did not involve the police asking a non-suspect witness for identification. In *Romero*, a security guard called the police to request that both a man and woman be removed from the mall after the man mad-dogged a store employee and the woman with him was suspected of shoplifting. *Id.* at *2. While the officer spoke with the man who the guard identified and was filling out a criminal trespass notice for him, a woman approached and asked, "Why are we getting a trespass? We didn't do nothing wrong here." *Id.* The officer responded by asking for her identification three times, and she refused and attempted to get away from him by going to her car. *See id.* He then arrested her. *See id.* In *Romero*, the court found the officer had reasonable suspicion to detain the plaintiff for the separate crime of shoplifting, and when she refused to give identification and attempted to leave the scene of his investigation, the officer had at least arguable probable cause to arrest her for concealing identity. *See id.* at 4-5. By contrast, construing the facts in Plaintiff's favor, Officer Aguilar had no reasonable suspicion of a separate predicate crime that could support his arresting Mr. Corona for failing to give the officer his license.

Finally, Defendants contend that Plaintiff failed to address the law that Officer Aguilar could ask the occupants of a vehicle to exit the vehicle and provide identification during a traffic stop. *See* Defs.' Reply 10, ECF No. 61. Defendants' argument that Officer Aguilar's right to ask Mr. Corona for his ID should somehow alter the Court's inquiry is misplaced. In *Hiibel*, the Supreme Court held that a police officer is free to ask a person for identification during a *Terry*

stop[3] without implicating the Fourth Amendment. *Hiibel*, 542 U.S. at 185. *See also Muehler v. Mena*, 544 U.S. 93, 101 (2005) (explaining that mere police questioning does not constitute a seizure, and officers may ask about identity during a lawful detention, so long as the detention was not prolonged by the questioning). Here, Officer Aguilar did not merely order the occupants out of the vehicle and request identification – he ordered Mr. Corona out of the car and immediately placed him in handcuffs and arrested him for failing to produce identification. Having placed him under arrest, Officer Aguilar transformed the *Terry* stop of the driver into an arrest of Mr. Corona that must be supported by probable cause to be lawful. While Officer Aguilar may have had the right to *ask* Mr. Corona for his ID, he did not have the right to *arrest* him for failing to immediately produce it absent particularized reasonable suspicion of an underlying crime. *Romero*, 413 F. App'x. at 67 ("We have not been cited a single authority carving out an exception from the categorical requirement of reasonable suspicion of a crime, stated in *Brown* in 1979 and restated in *Hiibel*, in 2004, so as to permit the arrest of a mere witness for failing to provide identification on demand.").[4]

In conclusion, Mr. Corona's right to be free from a warrantless arrest under the circumstances here was clearly established at the time of this incident by *Brown* and *Keylon*. Officer Aguilar is therefore not entitled to qualified immunity.

As for Officer Loomis, Mr. Corona does not indicate how Officer Loomis' actions have violated his Fourth Amendment right to be free from unlawful arrest. Most notably, at the time Officer Aguilar arrested Mr. Corona, Officer Loomis was only arriving on the scene. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).
[4] The case of *United States v. Gurule*, __ F.3d __, 2019 WL 3022583 (10th Cir. July 11, 2019), about which Defendants filed a notice of supplemental authority (ECF No. 81), is likewise distinguishable. In *Gurule*, the officers had only detained the passenger, not arrested him, prior to conducting a pat-down frisk after having observed a gun in the passenger's pocket. *See id.* at *3-5.

violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Because Mr. Corona has not shouldered his burden to demonstrate how Officer Loomis violated his Fourth Amendment right to be free from an unlawful arrest or shown that the right was clearly established, the § 1983 Fourth Amendment unlawful seizure claim against Officer Loomis must be dismissed.

### 3. Malicious Abuse of Process

Plaintiff asserts a claim for "misuse of process" and "malicious abuse of process."[5] In 1997, the New Mexico Supreme Court declared that "these torts [abuse of process and malicious prosecution] should be restated as a single cause of action, which shall be known as 'malicious abuse of process'...." *DeVaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, ¶ 17, 124 N.M. 512 (1997). Over ten years later, the New Mexico Supreme Court reversed the *DeVaney* decision with respect to its analysis of one of the tort's elements but left in place the combined tort of malicious abuse of process. *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694.[6] As such, the Court will infer that Mr. Corona seeks to assert a claim for malicious abuse of process against Defendants.

To satisfy a claim for malicious abuse of process under New Mexico law, the plaintiff must demonstrate: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. *Durham*, 2009-NMSC-007, ¶ 29. "An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) 'an irregularity or impropriety suggesting extortion, delay, or harassment[,]' or other conduct formerly

---

[5] Throughout the First Amended Complaint, Mr. Corona refers to the torts of "abuse of process" and "malicious prosecution" by several different names, including "misuse of process," First Am. Compl. 1, ECF No. 1-1, "malicious abuse of process," *id.*, "abuse of process," *id.* at 5, and "malicious abuse prosecution," *id.*

[6] Notably, since the New Mexico Supreme Court's decision combining the torts of malicious prosecution and abuse of process, the New Mexico Tort Claims Act has not been modified to reflect this change. *See* N.M.S.A. 1978, § 41-4-12 (stating that immunity for law enforcement officers does not apply to liability for "malicious prosecution" and "abuse of process").

actionable under the tort of abuse of process." *Id.* (quoting *Fleetwood Retail Corp. of N.M.*, 2007-NMSC–047, ¶ 12, 142 N.M. 150). To demonstrate a lack of probable cause, the plaintiff must show that the defendant did not have a "reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury." *Fleetwood*, 2007-NMSC-047, ¶ 13 (quoting *DeVaney*, 1998-NMSC-001, ¶ 22). This tort must be construed narrowly to protect the right of access to the courts. *Durham*, 2009-NMSC-007, ¶ 29.

Defendants argue that Plaintiff cannot satisfy the first element because the filed charges were supported by probable cause, as determined by a Curry County Magistrate Court Judge. In response, Plaintiff contends that Defendant Aguilar made the following false allegations in the Criminal Complaint: (i) Mr. Corona continuously interjected into his traffic stop investigation, (ii) Mr. Corona made threatening body movements after being handcuffed that implicated an officer safety concern, and (iii) Mr. Corona verbally abused Defendant Aguilar. Plaintiff argues that these false statements meet the element of filing a complaint without probable cause or an improper action.

Mr. Corona has proffered evidence from which a reasonable jury could deduce Officer Aguilar filed a complaint lacking in probable cause or acted improperly in filing a complaint with false or misleading allegations. For the reasons previously discussed, the Court cannot find as a matter of law that Officer Aguilar had probable cause to arrest Mr. Corona for concealing identity or resisting, evading, or obstructing an officer. As for the statements in the Criminal Complaint, from the video evidence submitted, a reasonable jury could find that Mr. Corona did not interfere with Officer Aguilar's investigation when asking questions, that Mr. Corona was not resisting, pulling away from, or otherwise making threatening body movements toward Officer Aguilar prior to being thrown to the ground, and that Mr. Corona did not use abusive language toward Officer

Aguilar. Moreover, Mr. Corona submitted Officer Aguilar's deposition transcript, in which Officer Aguilar admitted that, before he asked for his identification, he did not think Mr. Corona was doing anything suspicious and did not suspect him of committing a crime. *See* Tr. 47:4-11, ECF No. 54 at 39. While Officer Aguilar's statements are not relevant for purposes of the objective inquiry under the Fourth Amendment, they may be used by Mr. Corona to prove whether Officer Aguilar made misleading statements for the purpose of harassment.

These factual disputes must be decided by a jury, who can then deduce whether Officer Aguilar filed a complaint knowing it was not supported by probable cause or acted improperly by filing a complaint with false and misleading statements. Defendants did not make a separate argument as to why Plaintiff's malicious abuse of process claim against Defendant Loomis should be dismissed, relying instead on the general argument that the officers had a reasonable belief in the validity of the allegations. Because genuine issues of material fact exist on that issue, the Court will not dismiss Plaintiff's malicious abuse of process claim against either officer.

**IT IS THEREFORE ORDERED that** Defendants' *First Motion for Partial Summary Judgment and Memorandum in Support Thereof* (**ECF No. 41**) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' request to dismiss Plaintiff's claim for violation of due process under the Fourteenth Amendment is **GRANTED**.

2. Plaintiff's § 1983 excessive force claim against Defendant Aguilar will remain in the case.

3. Defendants' request to dismiss Plaintiff's § 1983 unlawful arrest claim against Defendant Aguilar is **DENIED**.

4. Defendants' request to dismiss Plaintiff's § 1983 unlawful arrest claim against Defendant Loomis is **GRANTED**.

5. Defendants' request to dismiss Plaintiff's malicious abuse of process claims against Officers Aguilar and Loomis is **DENIED**.

6. **Within ten days** of entry of this Memorandum Opinion and Order, Plaintiff must file a notice with the Court setting forth whether he is pursuing a separate § 1983 excessive force claim against Defendant Loomis. Should the parties wish to submit a dispositive motion on the merits of the excessive force claim(s) only, any such motion must be filed **within 21 days** of the filing of Plaintiff's Notice.

_____
Judith C. Herrera
United States District Court Judge