UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JORGE RAY CORONA,**

    **Plaintiff,**

vs.                                                   No. 17-CV-00805 JCH-CG

**CITY OF CLOVIS, et al.,**

    **Defendants.**

## DEFENDANT TRAVIS LOOMIS' MOTION FOR SUMMARY JUDGMENT AND FOR QUALIFIED IMMUNITY ON PLAINTIFF'S EXCESSIVE FORCE CLAIMS & MEMORANDUM IN SUPPORT THEREOF

**COMES NOW** Defendant Travis Loomis, by and through his attorneys of record Jarmie & Rogers, P.C., and pursuant to FED. R. CIV. P. 56, hereby moves for summary judgment on plaintiff's excessive force claims[1] against him under 42 U.S.C. § 1983 on the basis of qualified immunity. Plaintiff has been contacted and opposes this Motion. For his Motion for Summary Judgment, Officer Loomis states as follows:

**I.**     ***Statement of Undisputed Material Facts***

1. Clovis Police Department Officers Brent Aguilar and Travis Loomis were on duty in the early morning hours of August 3, 2014 in Clovis, New Mexico. *See First Amended Complaint*, Doc. No. 1-1 (filed Aug. 8, 2017), at ¶¶ 3-4; *Defendants' Answer to First Amended Complaint*, Doc. No. 4 (filed Aug. 15, 2017), at ¶¶ 3-4.

---

[1] On August 21, 2019, plaintiff indicated that he is "pursuing a separate § 1983 excessive force claim against Defendant Loomis." *See Plaintiff's Notice Regarding 1983 Claim of Excessive Force by Defendant Loomis*, Doc. No. 86 (filed Aug. 21, 2019). Pursuant to this Court's *Memorandum Opinion and Order*, Doc. No. 84, p.24 ¶ 6 (filed Aug. 12, 2019), Officer Loomis files the instant Motion in response to plaintiff's excessive force claims.

2. On August 3, 2014, at approximately 2:15 a.m., Officer Aguilar, while travelling in his patrol unit, observed a vehicle speeding through a red light in Clovis. *Affidavit of Brent Aguilar*, Doc. No. 41-1 (filed Aug. 3, 2018), at ¶¶ 2-3; *see also Complaint*, at ¶ 7; *Answer*, at ¶ 7; *Memorandum Opinion and Order*, Doc. No. 84, p.2.

3. Officer Aguilar activated the lights on his patrol unit and pursued the speeding vehicle. Doc. No. 41-1, at ¶ 4. Officer Aguilar conducted a traffic stop of the vehicle. *Id.*; *see also Complaint*, at ¶ 6; *Answer*, at ¶ 6.

4. Officer Aguilar approached the driver's side of the stopped vehicle and asked the driver to roll down the rear left passenger window. *Complaint*, at ¶ 8; *Answer*, at ¶ 8; *Memorandum Opinion and Order*, Doc. No. 84, p.3.

5. Officer Aguilar commanded plaintiff out of the back seat of the vehicle, handcuffed plaintiff with his arms behind his back, turned plaintiff around, and began to escort plaintiff towards his patrol unit. *Complaint*, at ¶ 16; *Answer*, at ¶ 16; *Memorandum Opinion and Order*, Doc. No. 84, p.3.

6. This Court has previously found that, while escorting plaintiff towards his patrol unit, Officer Aguilar "slammed [plaintiff] down to the ground on the asphalt." *Memorandum Opinion and Order*, Doc. No. 84, p.4; *see also Aguilar Dash Camera Video*, previously lodged as **Exhibit B** to Doc. No. 41, at 3:57-4:00. As shown by the video, this "slam" lasted approximately three seconds. *See generally id.*

7. As shown by his own dash camera video, Officer Loomis arrived on scene while Officer Aguilar was interacting with plaintiff and Keisha Lujan, just as Officer Aguilar arrested plaintiff. *Loomis Dash Camera Video*, previously lodged as **Exhibit C** to Doc. No. 41, at 00:57 to 01:25;

**Exhibit B**, at 03:40 to 03:46; *Memorandum Opinion and Order*, Doc. No. 84, p.4; *see also id.* p.20 ("at the time Officer Aguilar arrested [plaintiff], Officer Loomis was only arriving on the scene").

8.  Officer Loomis did not actually utilize any amount of force against plaintiff, and was not handling or touching plaintiff when Officer Aguilar's alleged "slam" of plaintiff occurred. **Exhibit C**, at 1:29-1:35; *see also* **Exhibit B**, at 3:57-4:00. Officer Loomis did not thereafter touch or otherwise handle plaintiff. *See* **Exhibit C**, at 1:35 to 2:15.

### III.    *Argument and Authorities*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In response to a motion for summary judgment, the plaintiff may not rely merely on allegations or denials in his own pleading—rather, his response must set out specific facts showing a genuine issue for trial. See generally FED. R. CIV. P. 56(e)(2), (3). The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

   A. <u>Standards for Qualified Immunity</u>

Qualified immunity is "the most important doctrine in the law of constitutional torts" because it shields a government official from a civil suit for monetary damages unless said official violates "clearly established" constitutional rights. John C. Jeffries, Jr., *What's Wrong with Qualified Immunity?*, 62 Fla. L. Rev. 851, 852 (2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982). "Law enforcement officers are, of course, entitled to a presumption that they are immune from lawsuits seeking damages for conduct they undertook in the course of performing their jobs." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011), *cert. denied*, 133 S.Ct. 645 (2012). In analyzing the qualified immunity defense, this Court must consider if plaintiff's allegations establish a constitutional violation, and if plaintiff has shown a constitutional violation, the Court must determine whether the law was clearly established at the time the alleged violation occurred. *See*, *e.g.*, *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). To overcome the defense of qualified immunity, a plaintiff must carry the "heavy burden" of showing the violation of a "clearly established" constitutional right (emphasis supplied). *Id.*

"To be clearly established, a legal principle must have a sufficiently clear foundation in *then-existing precedent*" such that it is "settled law." (emphasis supplied). *D.C. v. Wesby*, 138 S.Ct. 577, 589 (2018); *see also Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (the plaintiff must show that the constitutional rights the Defendants allegedly violated were clearly established at the time of the conduct at issue) (quoting *Albright v. Rodriquez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995)). The United States Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S.Ct. at 591 n.8. This Court, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)); *see also Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012). The plaintiff must show that the constitutional rights the Defendants allegedly violated were clearly established at the time of

4

the conduct at issue. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). "A reasonable government official cannot necessarily be expected to recognize the significance of a few scattered cases from disparate areas of the law." *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991) (internal citations omitted) (quoting *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989); *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985)). Where the general state of the law at the time of the complained-of action "cast[s] enough shadow on the area," qualified immunity applies. *See Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1233 (10th Cir. 2008) (quoting *Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir. 1992)).

In the present case, plaintiff cannot show that Officer Loomis violated any "clearly established law" in existence as of August 3, 2014. The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. *See, e.g.*, *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011); *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013); *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014); *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam); *see also Callahan v. Unified Gov't of Wyandotte Cnty./Kansas City*, 806 F.3d 1022, 1027-28 (10th Cir. 2015). In conducting this analysis, this Court must "define the clearly established right at issue on the basis of the *specific context* of the case" (emphasis supplied). *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017) (quoting *Tolan*, 134 S.Ct. at 1866); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition").

For purposes of qualified immunity, the relevant "clearly established law" must be "particularized" to the facts of the case. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *cf. Pyle v. Woods*, 874 F.3d 1257,

5

1263-64 (10th Cir. 2017). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity...into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S.Ct. at 552 (quoting *Anderson*, 483 U.S. at 639). In the two years since it decided *White*, the Supreme Court, as well as the Tenth Circuit, have repeatedly reaffirmed and applied this "particularity" or "specificity" requirement. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 186-67 (2017); *D.C. v. Wesby*, *supra*, 138 S.Ct. at 590 ("[t]he clearly established standard…requires a high degree of specificity") (quotations omitted)); *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018) (per curiam) ("police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue") (quoting *Mullenix*, 136 S.Ct. at 309; *Knopf v. Williams*, 884 F.3d 939, 946-50 (10th Cir. 2018); *Redmond v. Crowther*, 882 F.3d 927, 935, 938-39 (10th Cir. 2018); *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018); *see also Armijo v. Santa Fe Cnty.*, 2018 WL 3118290, *14 (D.N.M. June 25, 2018) (unpublished).

The burden is on the plaintiff to identify a case where police officers acting under similar circumstances as Officer Loomis in the present case were held to have violated the Constitution. *See id.*; *see also Hilliard v. City & Cnty. of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991); *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017) ("[p]laintiff must present controlling authority that 'squarely governs the case here,'...and that would have put 'beyond debate'...the question" presented in the case) (citations omitted); *Garcia v. Escalante*, 2017 WL 443610, *4 (10th Cir. Feb. 2, 2017) (unpublished) ("[p]laintiff must present controlling authority that 'squarely governs the case here,'...and that would have put 'beyond debate'...the question" presented in the case) (citations omitted); *Malone v. Bd. of Cnty. Comm'rs*, 707 F. App'x 552, 556 (10th Cir. Sep. 8, 2017) (unpublished) ("the parties do not cite, nor could we find, any Supreme

6

Court or Tenth Circuit case that is sufficiently close factually to the circumstances presented here to establish clearly the Fourth Amendment law that applies to our case"). Plaintiffs must establish more than a generalized principle of constitutional law. *Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. Nov. 12, 2015). Indeed, "the Supreme Court has sent out unwritten signals to the lower courts that factually identical or a highly similar factual case is required for the law to be clearly established." *McGarry v. Bd. of Cnty. Comm'rs for Cnty. of Lincoln*, 294 F.Supp.3d 1170, 1188 n.13 (D.N.M. 2018).

B.  Officer Loomis is Not Liable Under the Fourth Amendment

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement. . . but only when there is a governmental termination of freedom of movement through means *intentionally* applied.

(emphasis in original). *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1986). Where the plaintiff's Section 1983 claim arises out of a use of force, the Court's first task is to "identify[] the specific constitutional right allegedly infringed by the challenged application of force." *See Graham v. Connor*, 490 U.S. 386, 394 (1989).

As the Tenth Circuit has explained, "[e]xcessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). In *Graham v. Connor*, the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other

7

'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, *supra*, 490 U.S. at 395. The Fourth Amendment "protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty" when evaluating an excessive force claim. *See Porro*, 624 F.3d at 1325.

The Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (internal citation omitted)). "The Supreme Court has stated that a small amount of force, such as an arrest where one is handcuffed, placed in a police vehicle, and taken to the police station may be inconvenient and embarrassing, but it does not rise to the level of excessive force." *Harapat v. Vigil*, 676 F.Supp.2d 1250, 1269 (D.N.M. 2009) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001)). It was, of course, perfectly acceptable of Officer Aguilar to handcuff plaintiff. *See*, *e.g.*, *Fisher v. City of Las Cruces*, 584 F.3d 888, 893-96 (10th Cir. 2009) (holding that the Fourth Amendment was not violated by a law enforcement officer's decision to handcuff an individual suspected of a petty misdemeanor, reasoning that the Supreme Court has "recognized that handcuffing was an appropriate response to officer-safety concerns even during investigative detentions"); *Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006) (holding that keeping an arrestee in handcuffs while transporting her to a detention facility, based on standard police practice, did not constitute excessive force)); *see also Kain v. Nesbitt*, 156 F.3d 669 (6th Cir.1998).

In the present case, Officer Loomis cannot be held liable for excessive force. In his Complaint, plaintiff that Officer Loomis did nothing to stop Officer Aguilar from assaulting him.

*First Amended Complaint*, Doc. No. 1-1, *supra*, at ¶ 41. Nor do the videos previously submitted to this Court show that Officer Loomis actually utilized any kind of force upon plaintiff. As this Court has previously noted, plaintiff "does not differentiate arguments regarding a constitutional excessive force claim against Defendant Loomis." *Memorandum Opinion and Order*, Doc. No. 84, *supra*, p.8. Personal involvement is required in order for an individual to be liable for a constitutional violation under 42 U.S.C. § 1983. *See, e.g.*, *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001). "Liability under § 1983 . . . , and [the] defendants' entitlement to qualified immunity, turn[s] on an *individual assessment of each defendant's conduct and culpability*" (emphasis supplied). *Pahls v. Thomas*, 718 F.3d 1210, 1233 (10th Cir. 2013). It would thus appear that plaintiff is attempting to bring a "failure to intervene" claim against Officer Loomis. However, under the governing law, such a claim cannot stand.

Generally, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *see also Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) (stating first officer on scene has duty to keep arrest from getting out of hand). In order to state a Section 1983 claim for failure to intervene in the use of excessive force, the plaintiff must show facts to support the inference that the bystander officer knew that a fellow officer was violating (or about to violate) an individual's constitutional rights through the use of excessive force, and despite having a reasonable opportunity to prevent the violation, chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). In resolving whether a plaintiff has

sufficiently alleged a bystander liability claim, the Court must also consider whether an officer "acquiesce[d] in" the alleged constitutional violation. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (premising liability on senior officer's knowledge of, and acquiescence in, treatment of victim). It stands to reason, then, that a bystander officer cannot be acquiesce in violations when he had no prior knowledge of the allegedly improper acts, and no realistic opportunity to object or to intervene to prevent them. *See Mata v. City of Farmington*, 791 F. Supp. 2d 1118, 1156-57 (D.N.M. 2011); *see also Zubia v. Denver City*, 2015 WL 13665440, *3 (D.N.M. Mar. 30, 2015) (unpublished).

Thus, an officer who fails to intercede is liable only where that officer observes or has reason to know that excessive force is being used or that any constitutional violation has been committed by another law enforcement official. *See*, *e.g.*, *Hall v. Burke*, 12 F. App'x 856, 861 (10th Cir. 2001) (unpublished). Additionally, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. *Id.*; *see also Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir.1984), *judgment vacated on other grounds by City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985). In the present case, the videos previously submitted to this Court show that, at *most*, Officer Loomis was merely present during and witnessed Officer Aguilar's alleged use of force.[2] Even assuming *arguendo* that Officer Aguilar used excessive force (though, as noted above, he did not), this is not sufficient to hold Officer Loomis liable for failure to intervene or intercede under Section 1983. *Cf. Gutierrez v. Cobos*, 2014 WL 12797234, *10 (D.N.M. Mar. 26, 2014) (unpublished).

Finally, there is no particularized law squarely governing the facts of this case which would

---

[2] Officer Loomis does not concede or suggest that Officer Aguilar actually used excessive force.

have put Officer Loomis on notice that his actions on August 3, 2014 might be unconstitutional. "When a plaintiff complains that a public official has violated the Constitution, qualified immunity shields the official from individual liability unless he had fair notice that his alleged conduct would violate 'the supreme Law of the Land.'" *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quoting U.S. Const. art. VI), *cert. denied*, 139 S.Ct. 2678 (2019); *see also Lindsey v. Hyler*, 918 F.3d 1109, 1116 (10th Cir. 2019) (plaintiffs failed to demonstrate that Defendant Officer "violated…a constitutional right that was 'clearly established'"). "Because the Constitution's general provisions can be abstract," fair notice protects an official from "liab[ility] for conduct that [he or she could] reasonably believe[] was lawful." Aaron L. Nielson & Christopher J. Walker, *A Qualified Defense of Qualified Immunity*, 93 Notre Dame L. Rev. 1853, 1873 (2018). As noted above, it is the plaintiff's burden to supply this Court with precedent that "squarely governs" the facts of this case. *Routt v. Howard*, 764 F. App'x 762, 767 (10th Cir. Mar. 1, 2019) (unpublished) ("[t]aking as true the allegation of slinging Mr. Routt into his cell causing injury, Mr. Routt has failed to provide any precedent that 'squarely governs' these alleged facts") (citing *Mullenix v. Luna*, 136 S.Ct. 305, 310 (2015) (evaluating whether law was clearly established, stating "none of our precedents 'squarely governs' the facts here")).

In the present case, the alleged use of force lasted only seconds—even assuming *arguendo* that the force was unreasonable, Officer Loomis did not have a reasonable opportunity to intervene. *See*, *e.g.*, *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F.Supp.2d 1090, 1155 (D.N.M. 2012); *Farrell v. DeTavis*, 2016 WL 10859789, *13 (D.N.M. Aug. 30, 2016) (unpublished) ("Officers Detavis and Luna are entitled to qualified immunity on Plaintiffs' claims for failure to intervene in Officer Montoya's shooting, which took only six seconds"), *rev'd on other grounds*, *Farrell v.*

*Montoya*, 878 F.3d 933 (10th Cir. 2017); *see also Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. Feb. 27, 2018) (unpublished) ("[i]nstances of force that occur within seconds do not place officers in a realistic position to intervene") (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008)). To Defendants' knowledge, no binding, published case has clearly established a constitutional right regarding an officer's alleged failure to intervene when the alleged excessive force lasted mere seconds.

In sum, Officer Loomis did not have a reasonable opportunity to intervene in the alleged use of force—as such, he is entitled to qualified immunity. No published United States Supreme Court or Tenth Circuit case in existence as of August 3, 2014 would have put Officer Loomis on notice that his conduct might be unlawful. As such, he is entitled to qualified immunity.

**WHEREFORE**, Officer Travis Loomis respectfully requests that this honorable Court grant him summary judgment on plaintiff's excessive force claims as set forth above, and for whatever further relief this Court sees fit.

Respectfully submitted,

**JARMIE & ROGERS, P.C.**

*/s/ Cody R. Rogers*
Cody R. Rogers
P.O. Box 344
Las Cruces, NM 88004
(575) 526-3338
crogers@jarmielaw.com
***Attorneys for Defendants***

      I hereby certify that on September 11, 2019, I filed the foregoing through this Court's CM/ECF filing system, causing a true and correct copy of the same to be served electronically upon all counsel of record as more fully reflected in the Notice of Electronic Filing.

*/s/ Cody R. Rogers*
Cody R. Rogers