IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JORGE RAY CORONA,

    Plaintiff,

v.                                                                                                                        No. 2:17-cv-805 JCH/CG

CITY OF CLOVIS, CLOVIS POLICE
DEPARTMENT, OFFICER BRENT AGUILAR,
and OFFICER TRAVIS LOOMIS, in their official
capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendant Travis Loomis' Motion for Summary Judgment and for Qualified Immunity on Plaintiff's Excessive Force Claims & Memorandum in Support Thereof* (ECF No. 88). After considering the parties' filings, the record, and the relevant law, the Court concludes that the motion for summary judgment should be granted.

    **I.**    **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the lawsuit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation omitted). A dispute over a material fact is "genuine" if the evidence presented could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation omitted). In considering a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the movant does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the party seeking summary judgment satisfies its burden, the burden then shifts to the non-movant to go beyond the pleadings and set forth specific facts supported by reference to affidavits, deposition transcripts, or other admissible evidence. *See id.*

The incident in this case was captured, at least in part, on the police dashcam video, submitted as "Plaintiff's Exhibit 4," and from Officer Aguilar's lapel camera entitled "Plaintiff's Exhibit 3." In a case such as this one, where there is a video recording capturing the events in question, a court should view the facts in the light depicted by the video recording. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Consequently, the facts set forth in the next section are drawn from the undisputed evidence; the video recording; and, for the facts not conclusively established in the video recording, those facts that are supported by admissible evidence and construed in the light most favorable to Plaintiff, the non-moving party.

**II.    FACTUAL BACKGROUND**

Around 2:15 a.m. on August 3, 2014, Officer Brent Aguilar with the Clovis Police Department conducted a traffic stop after observing a vehicle speeding through a red light in Clovis, New Mexico. *See* Defs.' Mot. for Summ. J., Undisputed Facts ("UF") ¶¶ 1-2, ECF No. 41. Def. Loomis' Mot. for Summ. J., UF ¶¶ 1-2, ECF No. 88 Immediately upon approaching the

stopped vehicle, Officer Aguilar instructed the driver, Teshia Lujan, to roll down the back-passenger window while he shined his flashlight into the rear driver side window. *See* Defs.' Mot. for Summ. J., UF ¶ 5, ECF No. 41; Pl.'s Ex. 3 at 00:17-:21, ECF No. 58. Plaintiff Jorge Corona, a passenger in the back seat of the vehicle, asked Officer Aguilar why he stopped the vehicle. Defs.' Mot. for Summ. J., Undisputed Fact ¶ 5, ECF No. 41; Pl.'s Ex. 3 at 00:17. In response, Officer Aguilar said he was not talking to him. Pl.'s Ex. 3 at 00:23-:24. While continuing to shine his flashlight into the rear driver side window, Officer Aguilar asked the driver for her license, registration, and insurance. *Id.* 00:25-:27. A few moments later, Ms. Lujan handed some papers out the window and Officer Aguilar took the paperwork from her and asked if she had her license with her. *Id.* at 00:46-:51.

While Ms. Lujan searched for her license, Mr. Corona asked Officer Aguilar why he stopped them. Defs.' Mot. for Summ. J., UF ¶ 5, ECF No. 41; Pl.'s Ex. 3 at 01:09-:11. Officer Aguilar did not suspect Mr. Corona of committing a crime at that point. Tr. 47:4-11, ECF No. 54 at 39. In response to Mr. Corona's question, Officer Aguilar stated, "You're not driving, buddy. You got ID?" Pl.'s Ex. 3 at 1:12-:13. Mr. Corona responded, "Nah. Why you stopping us?" *Id.* at 01:13-15. Officer Aguilar replied while shining his flashlight in the back window, "Let me have your ID." *Id.* at 01:16. Again, Mr. Corona asked why he stopped them, and Officer Aguilar once again replied, "Let me have your ID." *Id.* at 01:17-18. Mr. Corona immediately asked again, "Why you stopping us?" *Id.* at 01:19-20. Officer Aguilar responded, "I'm gonna ask you one more time and then I'm going to place you under arrest" and asked for his ID. *Id.* at 01:20-22. Mr. Corona asked, "for what?" *Id.* at 01:23. Officer Aguilar then ordered Mr. Corona to step out of the car. *Id.* at 01:24. During this approximately 15-second interaction, Ms. Lujan continued to search for her license. *See id.* at 01:09-:22.

Mr. Corona got out of the car while asking again why he was stopping them. *Id.* at 01:25-:35. Officer Aguilar instructed him to turn around and face the car with instructions to place his hands behind his back. *Id.* at 01:35-:39. As Mr. Corona was being handcuffed and placed against the car, he once more asked Officer Aguilar, "why are you stopping us?" *Id.* at 1:36-38. Mr. Corona repeated his question and asked if he has a reason to pull them over, to which Officer Aguilar replied, "Yes, I do." *Id.* at 1:38-1:48. When he asked, "for what?" Officer Aguilar told him not to worry about it. *Id.* 1:48-:52.

Around the same time, Officer Travis Loomis with the Clovis Police Department arrived on scene and approached the driver's-side window of the vehicle. *See id.* at 1:58-:59; Defs.' Mot. for Summ. J., UF ¶ 10, ECF No. 41; Def. Loomis' Mot. for Summ. J., UF ¶ 7, ECF No. 88. Upon seeing Officer Loomis, Officer Aguilar informed him that Mr. Corona had been placed under arrest for concealing ID. Pl.'s Ex. 3, 1:58-:59. In response, Mr. Corona said, "Concealing ID, for what?" and repeatedly said, "I didn't conceal ID." *Id.* at 2:00-07. Mr. Corona noted, "You didn't even ask me what my name was." *Id.* at 2:07-:08.

As Officer Aguilar led Mr. Corona to the patrol car while Mr. Corona repeated that he didn't conceal ID, Officer Aguilar told him three times in a normal tone of voice, "Come on. Come on. Stop. Stop. Stop. Come on. I asked you for your ID." *Id.* at 2:00-2:12. Officer Aguilar then slammed Mr. Corona down to the ground on the asphalt. *See* Pl.'s Ex. 4 at 3:57-4:00, ECF No. 58. Officer Aguilar commanded loudly, "Stop. Stop." *See* Pl.'s Ex. 3 at 2:12-:16; Pl.'s Ex. 4 at 4:00-:01. A few moments later, Officer Aguilar informed him, "Now you are under arrest for resisting and evading too." Pl.'s Ex. 3 at 2:22-:25. Defendant Loomis did not touch Plaintiff or use any amount of force against Plaintiff when the slam occurred, and Defendant Loomis did not thereafter touch or otherwise handle Plaintiff. Def. Loomis' Mot. for Summ. J., UF ¶ 8, ECF No. 88.

4

### III. ANALYSIS

Under § 1983, state officials sued in their personal capacity for damages may raise the defense of qualified immunity. *See A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Once a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating both that (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *Id.* The Tenth Circuit has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1134-35 (quotations and citations omitted). The plaintiff carries the burden of making this two-part showing. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

To state an excessive force claim under the Fourth Amendment, the plaintiff must show that a "seizure" occurred and the seizure was "unreasonable." *Id.* (quoting *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). The reasonableness of the officer's belief as to the appropriate level of force should be judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The calculus of reasonableness must allow for the fact that officers must make split-second judgments in tense, rapidly evolving circumstances. *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009).

Because Defendants have invoked the qualified immunity defense, Plaintiff must also show that objectively reasonable officers could not have thought the force used was constitutionally permissible, in other words, they violated clearly established law. *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007). For a right to be clearly established, there must be a Supreme Court or Tenth Circuit case on point, as to the specific context of the case, not as a broad general

proposition, or the clearly established weight of authority from other courts must have determined the law to be as plaintiff urges. *See Fisher*, 584 F.3d at 900.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Officers may rely on information given by other law enforcement officers. *Id.* at 1424. An official who causes a citizen to be deprived of his constitutional rights can be held liable if the official set in motion a series of events that he knew or reasonably should have known would cause others to violate a citizen's constitutional rights. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (quoting *Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988)). It is also clearly established that an officer who fails to intervene to prevent a fellow officer's unconstitutional use of force may be liable under § 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). An officer may be liable if he is present when a fellow officer uses excessive force, has an opportunity to prevent the excessive use of force, yet fails to intervene. *See id.* at 1163. An officer, however, must have a "realistic opportunity" to prevent excessive force in order to incur § 1983 liability. *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (holding that defendant had no duty to intervene when "three blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them"). Merely being in the same area when constitutional deprivations occur is insufficient to establish liability. *See Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996).

Plaintiff argues that Defendant Loomis was present on scene, but he took no action to prevent Defendant Aguilar from body slamming Plaintiff on the ground without any provocation or resistance. Viewing the undisputed evidence and the evidence in the light most favorable to Plaintiff, Defendant Loomis had no realistic opportunity to intervene to prevent Defendant Aguilar

from slamming Plaintiff to the ground because it happened too fast, in a matter of seconds. Nor is there evidence suggesting Defendant Loomis had any reason to believe that Defendant Aguilar was about to slam Mr. Corona into the ground. The Court concludes that Defendant Loomis did not violate Plaintiff's right to be free from the excessive use of force as a matter of law. *Cf. Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (holding that officer who was present at scene but did not assist or direct second officer in using twist-lock maneuver to remove plaintiff from vehicle did not violate plaintiff's Fourth Amendment rights).

Plaintiff relies on two out-of-circuit cases in support of his argument that Defendant Loomis may be held liable for failing to intervene: *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), and *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972). *Bruner* is distinguishable because there the plaintiff was repeatedly struck and kicked by multiple officers and dragged down an alley. *Bruner*, 684 F.2d at 424. In *Byrd*, the plaintiff was struck repeatedly by multiple officers, and the court held that the officers who observed the beating may be held liable by a jury for failing to protect the plaintiff while the beating occurred in their presence. *See Byrd*, 466 F.2d at 9-11. Unlike in *Bruner* and *Byrd*, which involved repetitive blows and a chance to intervene, the evidence in Plaintiff's favor shows that Defendant Aguilar slammed Mr. Corona to the ground, but it occurred too quickly for Defendant Loomis to intervene. Accordingly, Plaintiff failed to satisfy either prong of the qualified immunity inquiry.

**IT IS THEREFORE ORDERED** that *Defendant Travis Loomis' Motion for Summary Judgment and for Qualified Immunity on Plaintiff's Excessive Force Claims and Memorandum in Support Thereof* (**ECF No. 88**) is **GRANTED** and Plaintiff's excessive force claim against Defendant Loomis is **DISMISSED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**